Nataranja BALA, M.D., Petitioner

v.

Martha Sue MAXWELL, Individually and as Representative of the Estate of Fred Maxwell, Jr., Deceased, and as Representative of all wrongful death beneficiaries, Respondent.

No. 95–0331.

Supreme Court of Texas.

Nov. 2, 1995.

John Roberson and Brian K. Johnson, Houston, for Petitioner.

Francis I. Spagnoletti, David A. Bickham, and John D. Charbonnet, Jr., Houston, for Respondent.

PER CURIAM.

In this wrongful death and survival action, the Maxwell family alleges that Dr. Nataranja Bala negligently failed to diagnose the cancer which caused Fred Maxwell's death. We hold that both the survival and wrongful death claims are barred by Article 4590i, section 10.01, of the Texas Revised Civil Statutes.

In December 1986, doctors hospitalized Maxwell for evaluation of anemia. Dr. Bala performed an esophagogastroduodenoscopy (EGD), which revealed a lesion in Maxwell's stomach. A biopsy of the lesion showed no sign of malignancy.

On December 9, 1987, Dr. Bala performed a second EGD, and ordered a biopsy of cells from the stomach lesion. The pathologist reported that the lesion was probably benign, but that malignancy "[could not] be ruled out with certainty." The report noted that tests on additional stains had not been completed, and an addendum to the report would follow. The addendum report, dated December 23, 1987, stated that the cells were consistent with a carcinoid, a type of benign tumor.

Maxwell next saw Dr. Bala on May 31, 1989. At that time, Dr. Bala scheduled a follow-up EGD for July 26, 1989. The EGD showed that the stomach lesion had become ulcerated. Because a biopsy indicated the presence of malignant cells, Dr. Bala recommended exploratory surgery. Pre-surgery tests led to the discovery of cancer in Maxwell's right lung and stomach. Although he underwent treatment for the cancer, he died on September 14, 1989.

On September 30, 1991, the Maxwells filed this suit, alleging that Dr. Bala and his partner, Dr. Mani, negligently failed to diagnose the cancer that led to Maxwell's death. The

trial court determined that the statute of limitations barred both the wrongful death and survival claims and rendered summary judgment for the doctors. The court of appeals affirmed with respect to Dr. Mani, but reversed the summary judgment for Dr. Bala on both claims. 892 S.W.2d 146.

Dr. Bala contends that the court of appeals mischaracterized his 1986, 1987, and 1989 examinations of Maxwell as a continuing course of treatment, and therefore incorrectly held that the limitations period began on July 29, 1989, when Dr. Bala last treated Maxwell. Instead, Dr. Bala argues, the limitations period began in 1987, when the alleged negligence occurred.

Dr. Bala also argues that the court of appeals erred by holding that the statute of limitations did not bar the Maxwells' wrongful death claim. The court of appeals found the suit timely under section 16.003(b) of the Texas Civil Practice and Remedies Code, which provides a two-year limitations period for wrongful death claims, beginning on the date of death. According to Dr. Bala, section 10.01 of the Medical Liability Act preempts the wrongful death statute of limitations when a wrongful death claim is based on medical negligence.

### The Survival Claim

Article 4590i, section 10.01 provides the limitations period for medical malpractice actions:

> Notwithstanding any other law, no health care liability claim may be commenced unless the action is filed within two years from the occurrence of the breach or tort or from the date the medical or health care treatment that is the subject of the claim or the hospitalization for which the claim is made is completed....

Tex.Rev.Civ.Stat.Ann. art. 4590i, § 10.01 (Vernon Supp.1995). Although the statute specifies three dates from which the limitations period may run, a plaintiff cannot simply choose among any of these dates. *Kimball v. Brothers*, 741 S.W.2d 370, 372 (Tex.

1987). If the injury results from a negligent course of treatment, rather than a specific instance of negligence, the limitations period begins on the last date of treatment. *Id.* However, when the precise date of the breach or tort is ascertainable, the limitations period begins on that date. *Id.*

The court of appeals held that the Maxwells' claim was based on Dr. Bala's continuing treatment for a stomach lesion, and there was no ascertainable date of the tort. The court of appeals relied on *Chambers v. Conaway*, 883 S.W.2d 156 (Tex.1993), in reaching this conclusion. In *Chambers*, the plaintiff complained to her family physician about a lump in her breast. The physician ordered a mammogram, and determined that the lump was benign. Three years later, the plaintiff underwent a second mammogram, from which the physician determined " 'everything [was] fine.' " *Id.* at 157. Between the first and second mammograms, and after the second mammogram, the physician treated the plaintiff on numerous occasions for other problems. After the second mammogram, she never again mentioned problems with her breasts. Eventually, she was diagnosed with breast cancer by another doctor.

In response to the doctor's summary judgment motion, the plaintiff presented an affidavit from a doctor who stated that, if a patient complains of a lump in her breast, a family physician has a duty to follow-up on this condition during subsequent visits. This evidence tended to establish that the defendant was negligent in each office visit after the plaintiff's initial complaint about her breast. Thus, the limitations period did not begin until the last of these office visits. *Id.* at 158.

Unlike *Chambers*, this case does not involve multiple failures to perform follow-up tests. The Maxwells allege that Dr. Bala was negligent in 1987 because he failed to order additional tests after the biopsy report stated malignancy could not be ruled out. The next time Dr. Bala examined Maxwell was in 1989. During the 1989 examination,

Dr. Bala ordered the third EGD, and the results of this test led to the diagnosis of cancer. Thus, any negligence could only have occurred in 1987.

The Maxwells suggest that, by failing to diagnose the cancer in 1987, and therefore not initiating a course of treatment for the cancer, Dr. Bala's negligence continued until the cancer was discovered. We have previously held that when a physician fails to diagnose a condition, the continuing nature of the diagnosis does not extend the tort for limitations purposes. *Rowntree v. Hunsucker*, 833 S.W.2d 103, 108 (Tex.1992). " 'While the failure to treat a condition may well be negligent, we cannot accept the self-contradictory proposition that the failure to establish a course of treatment is a course of treatment.' " *Id.* at 105–06 (quoting *Nykorchuck v. Henriques*, 78 N.Y.2d 255, 573 N.Y.S.2d 434, 434, 577 N.E.2d 1026, 1029 (1991)).

*Rowntree* also involved claims that a physician had breached his duty to perform tests which would have revealed the patient's high blood pressure, which ultimately lead to a stroke. This Court found that the doctor could have breached this duty "only on those occasions when he had opportunity to perform such [follow-up] examinations." *Id.* at 108. Likewise, Dr. Bala could have breached a duty to perform additional tests only when he examined Maxwell in 1986, 1987, or 1989. Because no signs of malignancy appeared in 1986, and Dr. Bala ordered tests which led to the diagnosis of cancer in 1989, a negligent failure to conduct follow-up procedures could have only occurred in connection with the December 1987 examination and EGD. We conclude that the limitations period commenced at that time.

### The Wrongful Death Claim

■ Generally, wrongful death claims are subject to a two-year limitations period that begins on the date of death. Tex.Civ.Prac. & Rem.Code § 16.003(b). However, when a wrongful death action is based on medical negligence, the medical malpractice limita-

tions statute, Article 4590i, section 10.01, conflicts with section 16.003. Section 10.01 provides that health care liability claims must be filed within two years from the alleged breach. Tex.Rev.Civ.Stat.Ann. art. 4590i, § 10.01. A "health care liability claim" is defined as a cause of action for "treatment, lack of treatment, or other claimed departure from accepted standards of medical care or health care or safety which proximately results in injury to or death of the patient." *Id.* § 1.03(a)(4).

The majority of courts of appeals that have addressed the conflict between the two statutes have determined that section 10.01 overrides section 16.003. *See Todd v. Planned Parenthood*, 853 S.W.2d 124, 127 (Tex.App.—Dallas 1993, writ denied); *Blackmon v. Hollimon*, 847 S.W.2d 614, 616–17 (Tex.App.—San Antonio 1992, writ denied); *Shidaker v. Winsett*, 805 S.W.2d 941, 943 (Tex.App.—Amarillo 1991, writ denied); *Sanchez v. Memorial Medical Ctr. Hosp.*, 769 S.W.2d 656, 660 (Tex.App.—Corpus Christi 1989, no writ). *But see Wilson v. Rudd*, 814 S.W.2d 818, 822 (Tex.App.—Houston [14th Dist.] 1991, writ denied). In *Shidaker*, the court stated that, if section 16.003 controlled medical negligence claims resulting in death, "[t]his result would be the antithesis of the legislative purpose in enacting the Medical Liability and Insurance Improvement Act to alleviate a perceived medical malpractice insurance crisis, a part of which was the adoption of the absolute two-year limitations period." *Shidaker*, 805 S.W.2d at 943.

In this case, the court of appeals held that section 16.003 governed the Maxwells' claims against Dr. Bala because "[t]he plain language of section 16.003(b) reflects a clear legislative intent to adopt an absolute two-year limitations period for wrongful death actions, and that period is triggered only by the event of death." 892 S.W.2d at 154. This reasoning ignores the clear language of section 10.01, which applies to all health care liability claims *notwithstanding any other law.* By including this language, the Legislature unequivocally expressed its intent that, when the time limitations of section

10.01 conflict with another law, section 10.01 governs. A wrongful death plaintiff suing on a medical negligence theory therefore does not necessarily have two full years from the time of death to bring a lawsuit. Rather, the statute of limitations expires at the same time it would have for the decedent, two years after the alleged negligence occurred.

As discussed above, under section 10.01, the limitations period for the Maxwells' claims expired in December 1989. Because the Maxwells' wrongful death action was not filed until 1991, section 10.01 bars this claim.

### Application of the Open Courts Provision

The Maxwells argue that, if the limitations periods for the survival and wrongful death actions began in 1987, application of the two-year limitations period of section 10.01 violates the "open courts" provision of Article I, section 13 of the Texas Constitution. The Maxwells claim that Fred Maxwell could not have discovered his action against Dr. Bala before his death, and strict application of the limitations period is unreasonable.

To establish an open courts violation, a plaintiff must satisfy a two-part test. *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 355 (Tex.1990). First, he must establish that he has a well-recognized common law cause of action. *Id.* Second, he must show that the restriction of his claim is unreasonable when balanced against the purpose of the statute. *Id.*

At common law, a personal injury claim did not survive an injured party's death, nor did a deceased's heirs have a common law action for their own losses. *Kramer v. Lewisville Memorial Hosp.*, 858 S.W.2d 397, 403 (Tex.1993). Such actions are now permitted only by statute. *Id.* Because the Maxwells have no common law right to bring either a wrongful death or survival action, they cannot establish an open courts violation.

### Conclusion

Both the survival and the wrongful death claims are subject to the time limitations of section 10.01. Because this two-year period expired in December of 1989, the Maxwells' action was untimely. Accordingly, a majority of this Court grants Dr. Bala's application for writ of error and, pursuant to Texas Rule of Appellate Procedure 170, without hearing oral argument, reverses the judgment court of appeals and renders judgment that the Maxwells take nothing.