**Timothy and Nancy KAHANEK, Appellants,**

v.

**Sheldon GROSS, M.D., Appellee.**

**No. 04–95–00918–CV.**

Court of Appeals of Texas, San Antonio.

June 24, 1998.

Rehearing Overruled Oct. 5, 1998.

Valorie W. Davenport, Law Offices of Valorie W. Davenport, Houston, for Appellant.

George F. Evans, Jr., Thad D. Spalding, Ruth Greenfield Malinas, Ball & Weed, P.C., San Antonio, for Appellee.

Before RICKHOFF, LÓPEZ and ANGELINI, JJ.

## OPINION

LÓPEZ, Justice.

This appeal arises from a grant of summary judgment in favor of the defendant, Dr. Sheldon Gross, in a medical malpractice case. In five points of error, appellants, Timothy and Nancy Kahanek, argue that: (1) the trial court erred in denying appellants' motion for continuance; (2) the trial court erred in granting appellee's motion for summary judgment; (3) the trial court erred in imposing sanctions against appellants' counsel; and (4) that the Bexar County district court system violated appellants' due process, equal protection, and open courts guarantees. We reverse the judgment of the trial court and remand for a trial on the merits.

### FACTUAL BACKGROUND

In 1986, Kyndil Kahanek was born with a congenital heart defect and underwent successful heart surgery. In June, 1990, Kyndil experienced a seizure and the Kahaneks were referred to Dr. Sheldon Gross, a pediatric neurologist. To control Kyndil's seizures, Dr. Gross prescribed the drug Tegre-tol. Dr. Gross also scheduled a follow up visit for Kyndil. On July 13, 1990, the Kahaneks took Kyndil to Dr. Gross for the scheduled follow up visit. Dr. Gross obtained tests to determine Kyndil's blood count and Tegretol level. After further consultation, Dr. Gross advised the Kahaneks to continue the treatment of Kyndil's seizures with Tegretol.

On January 20, 1992, Kyndil experienced another seizure, and the Kahaneks returned to Dr. Gross. During this visit, Dr. Gross increased the Tegretol dosage and requested a Tegretol-level test from Dr. Barth in the Yorktown Medical Clinic. In addition, Dr. Gross authorized Dr. Barth to continue refilling Kyndil's Tegretol prescription as needed.

Approximately a year and a half later, on June 12, 1993, Kyndil complained to her parents of nausea and abdominal pain. The Kahaneks sought treatment at Santa Rosa Children's Hospital. Kyndil's heart and liver ceased to function and Kyndil died on June 13, 1993. Dr. Gross did not examine Kyndil between January 20, 1992 and the date of her death, but Kyndil continued to take the prescribed medication in keeping with Dr. Gross's instructions. Although the record on appeal is poorly organized with several supplementations, and the medical records themselves are somewhat incomplete, Dr. Gross admitted in his affidavit, dated June 21, 1995, that he last ordered a refill of Tegretol for Kyndil on August 10, 1992. Dr. Gross moved for summary judgment based on the two-year statute of limitations in the Medical Liability Act, and the trial court granted the motion.

### MOTION FOR CONTINUANCE

In their first point of error, the Kahaneks argue the trial court erred in denying their motion for a continuance on the hearing for summary judgment. The Kahaneks reiterate their argument from the trial court that the early date of the hearing did not allow the Kahaneks an opportunity to obtain critical discovery. We disagree.

The Kahaneks filed suit under the cause number now on appeal on June 6, 1995. Dr. Gross filed a motion for summary judgment on July 14 and the court set the hearing date

for August 30. The Kahaneks argue the requests for discovery were delivered on the date of filing and that Dr. Gross's answers to the discovery requests were essential to the investigation of the case and preparation for the motion for summary judgment. The Kahaneks rely on two Houston decisions which held that the trial court's grant of summary judgment within two or three months of the filing date constituted an abuse of discretion. *See Levinthal v. Kelsey–Seybold,* 902 S.W.2d 508 (Tex.App.—Houston [1st Dist.] 1994, no writ); *Verkin v. Southwest Center One, Ltd.,* 784 S.W.2d 92 (Tex.App.—Houston [1st Dist.] 1989, writ denied). The Kahaneks' reliance on these cases is misplaced.

The Kahaneks filed the original action naming Dr. Gross as a defendant on January 20, 1994. The record reveals that on March 31, 1994, plaintiffs' first counsel withdrew from the case because of a conflict of interest. Affidavits illustrate the Kahanek's due diligence in attempting to secure new counsel during that time and they did so on June 22, 1994, with Valerie Davenport. Following a tortuous procedural history, the Kahaneks refiled the suit now on appeal against Dr. Gross on June 13, 1995. Although the Kahaneks refiled suit in June of 1995, current counsel had worked on the case since June of 1994. Therefore, current counsel had approximately one year to investigate the case and prepare proper discovery requests.

In the alternative, the Kahaneks did not prove the use of due diligence in obtaining the necessary discovery. Rule 252, concerning motions for continuance, requires that the movant show by affidavit testimony that the necessary discovery is material and that diligence has been used to produce the discovery. Tex.R. Civ. P. 252. The Kahaneks received Dr. Gross's answers to interrogatories seven days prior to the summary judgment hearing. The Kahaneks moved for a continuance to review Dr. Gross's answers. Without deciding whether Dr. Gross's responses to interrogatories are material, the record does not support the Kahanek's use of due diligence to obtain the discovery. As stated above, the Kahaneks originally filed suit January 20, 1994. More importantly, current counsel had approximately one year

to work on the case prior to the date of refiling. This evidence suggests that the trial court did not abuse its discretion in denying the motion for continuance. We overrule the Kahanek's first point of error.

## MOTION FOR SUMMARY JUDGMENT

In their second point of error, the Kahaneks argue the trial court erred in granting Dr. Gross's motion for summary judgment. We review the lower court's grant of summary judgment under well established summary judgment principles. The moving party bears the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *See* Tex.R. Civ. P. 166a(c); *Nixon v. Mr. Property Management Co., Inc.,* 690 S.W.2d 546, 548 (Tex.1985); *Swilley v. Hughes,* 488 S.W.2d 64, 67 (Tex.1972). In deciding whether a disputed material fact issue precludes summary judgment, we take as true all evidence favoring the non-movant. *See Nixon,* 690 S.W.2d at 548–49. Every reasonable inference from the evidence will be indulged in favor of the non-movant, and any doubts will be resolved in its favor. *See id.; Montgomery v. Kennedy,* 669 S.W.2d 309, 310–11 (Tex.1984).

In the instant case the trial court did not enumerate the grounds upon which summary judgment is based. Thus the judgment will be affirmed if any of the theories advanced in appellee's motions are meritorious. *See State Farm Fire & Cas. Co. v. S.S.,* 858 S.W.2d 374, 380 (Tex.1993); *Burnap v. Linnartz,* 914 S.W.2d 142, 145 (Tex.App.—San Antonio 1995, writ denied). At the trial court, Dr. Gross argued the evidence proves as a matter of law no negligence occurred in the treatment of Kyndil Kahanek, and further, the cause of action is barred by the statute of limitations. A defendant moving for summary judgment based on limitations must establish the defense as a matter of law. *See Jennings v. Burgess,* 917 S.W.2d 790, 793 (Tex.1996). If the movant fails to conclusively satisfy his burden of producing summary judgment proof sufficient to establish his right to judgment as a matter of law, the non-movant has no burden to produce summary judgment proof of like quality. *See*

*Morgan v. Jack Brown Cleaners,* 764 S.W.2d 825, 826 (Tex.App.—Austin 1989, writ denied). Indeed, the movant's own proof may raise a fact issue which defeats his own motion. *See Perry v. Houston Indep. School Dist.,* 902 S.W.2d 544, 547 (Tex.App.—Houston [1st Dist.] 1995, no writ); *Keever v. Hall & Northway Advertising, Inc.,* 727 S.W.2d 704, 706 (Tex.App.—Dallas 1987, no writ). Accordingly, we review the record to determine whether Dr. Gross met his burden for summary judgment.

### 1. The Statute of Limitations

 The Medical Liability Act provides a two-year statute of limitations for wrongful death claims based on medical malpractice. *See* TEX.REV.CIV. STAT. ANN. art. 4590i (Vernon Supp.1997); *Bala v. Maxwell,* 909 S.W.2d 889, 891–93 (Tex.1995). The Act provides:

> Notwithstanding any other law, no health care liability claim may be commenced unless the action is filed within two years from the occurrence of the breach or tort or from the date the medical or health care treatment that is the subject of the claim or the hospitalization for which the claim is made is completed; provided that, minors under the age of 12 years shall have until their 14th birthday in which to file, or have filed on their behalf, the claim. Except as herein provided, this subchapter applies to all persons regardless of minority or other legal disability.

TEX. REV. CIV. STAT. ANN. art. 4590i, § 10.01. The statute begins to run from one of three possible dates: (1) the occurrence of the breach or tort; (2) the date the health care treatment that is the subject of the claim is completed; or (3) the date the hospitalization for which the claim is made is completed. *See Chambers v. Conaway,* 883 S.W.2d 156, 158 (Tex.1993); *Rowntree v. Hunsucker,* 833 S.W.2d 103, 104 (Tex.1992). Even though three dates potentially may govern the limitations period, plaintiffs cannot choose the date most suitable for their claim. *See Bala,* 909 S.W.2d at 891.

 In general, when the precise date of the specific breach or tort is ascertainable from the facts of the case, the statute begins to run from that date. *See Kimball v. Brothers,* 741 S.W.2d 370, 372 (Tex.1987). However, the supreme court consistently notes that "under section 10.01, limitations begins on the last date of treatment if injury results from negligent course of treatment, rather than specific instance of negligence." *Bala,* 909 S.W.2d at 891. Specifically, the court held that the "last day of treatment" provision clearly applies "from the date of the last drug treatment, if the course of that treatment is the direct cause of the injury." *Rowntree,* 833 S.W.2d at 105.

The supreme court did not define what fact scenarios constitute a "course of treatment." The court has limited the scope of "course of treatment," holding that neither taking medication from a prescription nor refilling an existing prescription, *without more,* extends the period of limitations. *See id.* at 107. The court analyzed New York case law to reach a conclusion that when a plaintiff takes medication significantly beyond the period contemplated by the physician's prescription, without additional consultation by the physician, the physician ceases to treat that plaintiff and the plaintiff engages in self-treatment. *See id.*

Many distinguishing facts cause this case to fall under the "course of treatment" doctrine rather than the "self-treatment" scenario found in *Rowntree.* First, Hunsucker, the plaintiff in *Rowntree,* did not allege that a "course of treatment" was the direct cause of the plaintiff's injury. *See id.* at 108. Rather, Hunsucker alleged misdiagnosis in that the doctor failed to perform proper examinations during a specific consultation. Two years had passed since the allegedly negligent consultation, however Hunsucker sought to toll the statute of limitations because the same doctor renewed a prescription for an unrelated injury. Rightly so, the court determined an unrelated drug prescription will not act to toll the statute of limitations. *See id.* Dr. Gross's course of treatment constituted more than merely refilling a prescription. Not only do the Kahaneks challenge, through an affidavit by Dr. Singer, the refilling of the Tegretol prescriptions as negligent, but also the use of Tegretol in the first instance and the subsequent failure to monitor the level of

the drug in Kyndil's blood. Even though Dr. Gross did not examine Kyndil between her last visit and her death, Dr. Gross contemplated Kyndil's need to take this medication for an indefinite period of time. Dr. Gross specifically acted as the authorizing doctor for a second doctor, Dr. Barth, to refill Kyndil's prescription as needed. We find these facts and allegations taken together attack Dr. Gross's course of treatment to control Kyndil's seizures rather than a specific instance of negligence.

The supreme court recently decided a seemingly analogous case. See Diaz v. Westphal, 941 S.W.2d 96 (Tex.1997). Dr. Diaz treated the patient, Westphal, for Hodgkin's disease by prescribing the drug Cytoxan. Dr. Diaz last consulted the patient on August 6, 1992. During the same year, the patient began to urinate blood. After consultation with an emergency room physician, the patient discontinued the use of Cytoxan and ended the doctor-patient relationship with Dr. Diaz by consulting and accepting treatment from a different physician. In April of 1991, Westphal's new doctor discovered bladder cancer in preparation for reconstructive bladder surgery and Westphal died in April of 1992. See id. at 97. The supreme court held the limitations period for the survival claim against Dr. Diaz began to run on August 6, 1984, because it was the last ascertainable day of consultation where the doctor failed to properly diagnose the patient. See id. at 99.

The present case is distinguished from Diaz. In Diaz, the plaintiffs conceded the two-year statute of limitations applied from the last day of consultation. They argued to toll the statute of limitations based on the discovery rule and the open courts doctrine. The court rejected both theories because of the absolute two-year statute of limitations for health care claims. See id. The plaintiffs failed to offer summary judgment evidence refuting the start of the statute of limitations. See id.

Likewise, the most recent supreme court case on the issue is distinguishable precisely because the patient presented herself for annual breast examinations on readily ascertainable dates. In Husain v. Khatib, the de-fendant doctor ordered the mammogram which detected Khatib's cancer. The misdiagnosis could only have occurred during previous office visits—more than three years before suit was filed. See Husain v. Khatib, 964 S.W.2d 918, 919 (Tex.1998).

The facts of the present case do not require a departure from the supreme court's analyses of Diaz, Rowntree, and Husain. The record shows Dr. Gross last examined Kyndil Kahanek on January 20, 1992. If appellant's cause of action only included negligence in misdiagnosis, January 20, 1992, would be the day the tort occurred because it was the last day of consultation. In that event, the statute of limitations would bar any claim filed after January 20, 1994. However, the Kahaneks allege the drug treatment prescribed by Dr. Gross caused Kyndil's death. Dr. Gross admits to authorizing refills on August 10, 1992. There is no conclusive evidence as to the extent of time or amount of these refills. Resolving, as we must when reviewing a summary judgment, every reasonable inference from the evidence in favor of the non-movant, this admission of prescribing further treatment itself defeats the doctor's argument that, as a matter of law, January 20, 1992, is the date certain on which the tort was complete. See Jennings, 917 S.W.2d at 793 (movant must conclusively establish bar of limitations); Keever 727 S.W.2d at 706 (movant's exhibit may create fact question).

Furthermore, the autopsy illustrated that her liver and heart ceased to function and that she had abnormal levels of Tegretol in her blood. Specifically, the allegations, supported by Dr. Singer's affidavit, include that Dr. Gross negligently: (1) prescribed Tegretol; (2) increased the Tegretol dosage; (3) authorized future refills of Tegretol; and (4) failed to monitor Kyndil's reaction to Tegretol. These allegations taken together constitute an attack on Dr. Gross's "course of treatment" for Kyndil Kahanek's seizures. Therefore Dr. Gross's "course of treatment" for Kyndil Kahanek ended and limitations commenced to run on the last day of the drug treatment. Kyndil continued to take Tegretol until the date of her death on June 13, 1993.

■ Appellee argues that course of treatment was not argued at the summary judgment hearing and is therefore waived. We cannot find waiver, however, when appellee's own summary judgment evidence raises a fact question as to the date the tort was completed. *See Jones v. Cross*, 773 S.W.2d 41, 44 (Tex.App.—San Antonio 1989, writ denied). As the supreme court stated in *Clear Creek*, "summary judgments must stand on their own merits." *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678 (Tex.1979). Appellant is not precluded on appeal from pointing to the legal insufficiency of such a judgment. *See id.; Hammond v. Katy Indep. School Dist.*, 821 S.W.2d 174, 177 (Tex.App.—Houston [14th Dist.] 1991, no writ). We find that Dr. Gross failed to conclusively establish his affirmative defense of limitations.

**2. Issues of Fact Regarding the Allegations of Negligence**

■ In order to raise fact issues and preclude a grant of summary judgment in medical malpractice actions, expert witnesses for the patient must specifically identify the applicable standard of care, demonstrate that he is familiar with the standard, and explain why the physician's treatment fell below the standard. *See Knetsch v. Gaitonde*, 898 S.W.2d 386, 388 (Tex.App.—San Antonio 1995, no writ). This court further held,

> The critical thing is whether the affidavit describes an act or omission that, if believed, would equate to the legal definition of negligence because it falls below that degree of care that a physician of ordinary prudence would use under the same or similar circumstances.

*Id.* at 389.

In the present case, the Kahaneks offered the affidavit of Dr. Barry Singer who states that the applicable standard of care in these circumstances would be to monitor the patient's level of Tegretol in the blood. Dr. Singer further questions the use of Tegretol because there are available less toxic drugs which control seizures. Lastly, Dr. Singer states that if Dr. Gross properly followed the "required periodic monitoring necessary for safe Tegretol therapy, the death of the child

would have been preventable." This evidence illustrates that the Kahaneks met their burden of raising material fact issues to preclude the grant of summary judgment.

We find the statute of limitations does not bar the Kahaneks' claim and material fact issues exist as to negligence which preclude a grant of summary judgment. Therefore, we sustain the second point of error.

**SANCTIONS**

■ In their third point of error, the Kahaneks argue the trial court erred by ordering sanctions against appellant's counsel for failing to stipulate as to the authenticity of copies of lost documents. The Kahaneks fail to offer case law or argument which would justify a reversal of the trial court's judgment based on an order of sanctions against appellant's counsel. Appellants fail to properly brief this point of error and waive the issue on appeal. *See* TEX.R.APP. P. 52(a). We overrule the Kahanek's third point of error.

**OPEN COURTS DOCTRINE**

■ In points of error four and five the Kahaneks contend that during the course of their legal journey, the Bexar County court system violated their open access, due process, and equal protection guarantees. First, to establish an open courts violation there must be a recognized common law cause of action and the restriction on their claim must be unreasonable when balanced against the limitation statute's purpose. *Baptist Mem. Hosp. Sys. v. Arredondo*, 922 S.W.2d 120, 121 (Tex.1996). At common law, a personal injury claim did not survive the injured party's death and heirs did not have an action for their losses. *See id.; Bala*, 909 S.W.2d at 893. Therefore, the Kahaneks cannot make an open courts challenge. Second, the Kahaneks argue the grant of summary judgment violates their right to a trial by jury. *See* TEX. CONST. art. V, § 10. As previously noted, this court sustained the Kahanek's point of error alleging error in the grant of summary judgment. Therefore, we need not address this issue a second time. We overrule the Kahaneks' fourth and fifth points of error.

## CONCLUSION

In accordance with this opinion, we reverse the judgment of the trial court and remand the cause of action for a trial on the merits.

ANGELINI, J., dissents.

ANGELINI, Justice, dissenting.

I respectfully dissent because I believe the trial court properly granted summary judgment on the statute of limitations issue.

Dr. Gross moved for summary judgment on the ground that the Kahaneks' cause of action was barred by the statute of limitations. Specifically, Dr. Gross claimed that the cause of action accrued when he last saw Kyndil Kahanek in January, 1992. Therefore, according to Dr. Gross, the Plaintiff's petition, filed three years and five months later on June 13, 1995, was filed beyond the time for filing suit as set forth in Section 10.01 of the Medical Liability and Insurance Improvement Act.[1] Dr. Gross' summary judgment evidence included his own affidavit in which he states that he last saw Kyndil Kahanek on January 20, 1992, and that he "instructed the parents to bring the child to Dr. Barth in Yorktown to obtain Tegretol Blood levels in two weeks." Dr. Gross further states that the last Tegretol prescription he filled was on August 10, 1992, and that "[t]his was the last contact of any kind [he] had with this child." Finally, Dr. Gross states that Dr. Barth gave Kyndil prescription refills from September, 1992, until her death.

The Kahaneks filed a response to Dr. Gross' summary judgment motion. They did not dispute or controvert the dates set forth in Dr. Gross' affidavit. Instead, the Kahaneks argued that the statute of limitations did not begin to run until Kyndil's death on June 13, 1993, and, as derivative beneficiaries, they were not time-barred from filing their lawsuit within two years of Kyndil's death. Thus, according to the Kahaneks, their petition, filed on June 13, 1995, was timely. Nowhere in their response did the Kahaneks contend that Dr. Gross had failed to meet his summary judgment burden based on a theory of "continuing course of treatment" established by the refilling of prescriptions. Clearly, when the summary judgment motion was heard, the only issue pertaining to limitations before the trial court was whether the statute ran from the date Dr. Gross last saw Kyndil or from the date of her death. On appeal, the Kahaneks continue to argue, among other things and without citation to authority, that the statute of limitations did not begin to run until Kyndil's death. This argument is clearly wrong. *See* TEX.REV.CIV.STAT.ANN.art. 4590i, §10.01 (Vernon Supp.1997)(stating statute of limitations in medical malpractice cases runs from last date of treatment); *Bala v. Maxwell*, 909 S.W.2d 889, 891 (Tex.1995)(holding that section 10.01 of the Medical Liability and Insurance Improvement Act provides the applicable limitations period for wrongful death claims based on medical malpractice).

Alternatively, and for the first time in this lawsuit, the Kahaneks contend that if the statute of limitations begins to run on the last day of treatment, this is a "continuous course of treatment" case. They urge that Dr. Gross' refilling of the Tegretol prescription constitutes a continuous course of treatment and that the statute of limitations was thereby extended. The Kahaneks do not say how far the course of treatment extended, but point out that it was Dr. Gross' burden to firmly establish when the course of treatment ended.

The supreme court has made it clear that the non-movant in a summary judgment situation "must expressly present to the trial court, by written answer or response, any

---

1. The limitations provision of the Medical Liability and Insurance Improvement Act states:

 Notwithstanding any other law, no health care liability claim may be commenced unless the action is filed within two years from the occurrence of the breach or tort or from the date the medical or health care treatment that is the subject of the claim or the hospitalization for which the claim is made is completed; provided that, minors under the age of 12 years shall have until their 14 th birthday in which to file, or have filed on their behalf, the claim. Except as herein provided, this subchapter applies to all persons regardless of minority or other legal disability.
 TEX.REV CIV STAT. ANN art. 4590i, § 10.01 (Vernon Supp.1997).

issues defeating the movant's entitlement." *McConnell v. Southside School Dist.*, 858 S.W.2d 337, 343 (Tex.1993). The response must fairly apprize the movant and the court regarding issues the non-movant believes should defeat the motion. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979). Further, the rules of civil procedure provide that "[i]ssues not expressly presented to the trial court by written motion answer or other response should not be considered on appeal as grounds for reversal." TEX.R.CIV.P. 116a(c). The non-movant's failure to raise issues in a proper response cannot, however, supply by default the proof necessary to establish the movant's right to summary judgment. *McConnell,* 858 S.W.2d at 343. The movant's summary judgment must still stand or fall on its own merit. *Id.*

Dr. Gross moved for summary judgment, contending the last date of treatment in this case was January 20, 1992. His summary judgment proof established January 20, 1992, as the last day he treated Kyndil. The Kahaneks did not dispute that the last date Dr. Gross treated Kyndil was January 20, 1992, nor did they argue that the refilling of prescriptions constituted a continuous course of treatment. Instead, they urged that the statute of limitations ran from date of death rather than from last date of treatment. Thus, they did not preserve the issue of whether a continuing course of treatment existed beyond January 20, 1992, for appeal. *See Woods v. William M. Mercer,* 769 S.W.2d 515, 518 (Tex.1988) (holding matter in avoidance of statute of limitations is waived if not affirmatively raised); *Marshall v. First Baptist Church of Houston,* 949 S.W.2d 504, 508–09 (Tex.App.—Houston [14th Dist.] 1997, no writ) (finding basis for tolling statute of limitations waived where it was not raised in response to motion for summary judgment).

Even if, as the majority contends, Dr. Gross' affidavit raises an issue as to whether the last date of treatment was extended by the refilling of the prescription, the uncontroverted evidence shows Dr. Gross last refilled the prescription in August, 1992. Further, Dr. Gross' uncontroverted affidavit states that he had no further contact with Kyndil, and that Dr. Barth filled the prescription from September, 1992, until Kyndil's death. There is no controverting evidence to show that Dr. Gross filled any prescriptions beyond August, 1992. Therefore, the latest the statute of limitations could have accrued was in September, 1992. The lawsuit was filed June 13, 1995, which is still well beyond the limitations period.

For these reasons I dissent and would affirm the trial court's judgment.