NUMBER 13-05-064-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG







DONALD STREICH, Appellant,


v.



DR. JOSEPH DOUGHERTY Appellee.





On appeal from the 197th District Court


of Cameron County, Texas.






DISSENTING MEMORANDUM OPINION



Before Chief Justice Valdez and Justices Rodriguez and Castillo


Opinion by Justice Castillo




 Because I would uphold the summary judgment granted on no-evidence grounds, 
I respectfully dissent. 

THE LAW

 A no-evidence motion for summary judgment asserts that there is no evidence
of one or more essential elements of a claim on which the adverse party will bear the
burden of proof at trial. Tex. R. Civ. P.166a(i). A no evidence challenge requires us
to review only the evidence and reasonable inferences from the evidence that tend to
support the finding, disregarding all evidence and inferences to the contrary. Burt v.
Williams, 133 S.W.3d 718, 719-20 (Tex. App.-Corpus Christi 2003, no pet.) (citing
Sw. Bell Media, Inc. v. Lyles, 825 S.W.2d 488, 493 (Tex. App.-Houston [1st Dist.]
1992, writ denied)). 

 A defendant moving for summary judgment on a statute of limitations
affirmative defense must prove conclusively the elements of that defense. See
Velsicol Chem. Corp. v. Winograd, 956 S.W.2d 527, 530 (Tex. 1997). As the
majority states, former article 4590i, section 10.01 of the Texas Revised Civil Statutes
governs this case since suit was filed before September 1, 2003. Act of May 30,
1977, 65th Leg., R.S., ch. 817, § 1.01-12.01, 1977 Tex. Gen. Laws 2039-2053 (as
amended) (hereafter "article 4590i"), repealed by Act of June 2, 2003, 78th Leg.,
R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 884 (current version at Tex. Civ.
Prac. & Rem. Code § 74.001 et seq. (Vernon Supp. 2006)). A plaintiff may not simply
choose the most favorable date but, rather, if the specific date of the negligence could
be ascertained, then the limitations period commences upon that date. Earle v. Ratliff,
998 S.W.2d 882, 886 (Tex. 1999). In other words, if the date of the occurrence of
the breach or tort is ascertainable, then an inquiry into the second and third categories
is unnecessary. Shah v. Moss, 67 S.W.3d 836, 841(Tex. 2001). When a doctor fails
to properly diagnose a patient, the continuing nature of that failure alone does not
extend the limitation period. Bala v. Maxwell, 909 S.W.2d 889, 892 (Tex. 1995). Dr.
Dougherty was not entitled to summary judgment unless he conclusively established
that the statute of limitations barred the lawsuit. Gomez v. Carreras, 904 S.W.2d
750, 752 (Tex. App.-Corpus Christi 1995, no writ) (citing Rowntree v. Hunsucker,
833 S.W.2d 103, 104 (Tex. 1992); Delgado v. Burns, 656 S.W.2d 428, 429 (Tex.
1983)).

 With respect to the medical negligence claim, to raise a fact issue sufficient to
defeat summary judgment, the plaintiff's controverting expert should specifically
identify the standard of care, establish the expert's familiarity with that standard, and
explain why the treatment rendered by the defendant health-care provider breached the
applicable standard. See Hightower v. Saxton, 54 S.W.3d 380, 389 (Tex. App.-Waco
2001, no pet.). It necessarily follows that he must also show that personal injury was
proximately caused by such deviation. Rodriguez v. Reeves, 730 S.W.2d 19, 21 (Tex.
App.-Corpus Christi 1987, writ ref'd n.r.e.). The medical standard of care must be
established so that the fact finder can determine whether the physician's act or
omission deviated from the standard of care to the degree that it constituted
negligence or malpractice. Id. The fact finder would then decide whether the
deviation was of such degree that it constituted the alleged tort of medical negligence. 
See id. 

APPLICATION

A. Limitations

 Appellant Donald Streich filed suit on April 9, 2002, alleging that appellee Dr.
Joseph Dougherty committed acts constituting medical negligence during "treatment
on or about November 3, 1999, [that] continued . . . until on or about the year 2000." 
In his no-evidence motion for summary judgment, Dr. Dougherty asserted that (1) the
suit was time-barred as to all claims allegedly occurring between November 3, 1999
and February 27, 2000, and, (2) as to claims allegedly occurring after February 27,
2000, Streich could adduce no summary-judgment evidence of duty, breach of duty,
and proximate causation-particularly, deviation from the standard of care. 

 In his summary-judgment response, Streich maintained he "received
medical/dialysis treatment from Dr. Dougherty at least until March 2, 2000, when he
was advised by [a surgeon] that he had a lytic lesion, and [he] continued to receive
treatment until April 17, 2000 when a second surgery was performed on his back." 
In his summary-judgment affidavit, Streich's sole reference to Dr. Dougherty is that the
physician told him "the CT scan revealed a hairline crack to one of the vertebrae . . .
and that the pain . . . would gradually improve." Implicit in Streich's summary-judgment evidence is, generally, that Dr. Dougherty allegedly did not perform certain
exams that would have detected the lytic lesion. 

 Streich's complaint is essentially that Dr. Dougherty allegedly did not, but could
have, performed or ordered certain exams during specific office visits when Streich
presented with symptoms requiring further diagnostics. I would hold that the dates
on which the physician's alleged negligence took place were readily ascertainable. See
Shah, 67 S.W.3d at 843; Bala, 909 S.W.2d at 892. Thus, the two-year limitations
period began to run during the specific office visits occurring between November 3,
1999 and February 27, 2000. See former Tex. Rev. Civ. Stat. Ann. art. 4590i §
10.01; Shah, 67 S.W.3d at 843; Bala, 909 S.W.2d at 892. Streich did not file suit
during the pertinent two-year period. Thus, the two-year statute of limitations barred
the claims allegedly occurring between November 3, 1999 and February 27, 2000. 
See former Tex. Rev. Civ. Stat. art. 4590i § 10.01; Bala, 909 S.W.2d at 892. Thus,
Dr. Dougherty was entitled to summary judgment because he conclusively established
that the statute of limitations applied and barred these claims. See Gomez, 904
S.W.2d at 752. Accordingly, the trial court properly granted the no-evidence summary
judgment on limitations grounds for the claims. See Tex. R. Civ. P. 166a( i); Burt, 133
S.W.3d at 719-20. 

B. Deviation from the Standard of Care

 I would further hold that the statutory notice letter tolled the statute of
limitations as to alleged torts occurring on or after February 27, 2000. See former
Tex. Rev. Civ. Stat. Ann. art. 4590i § 10.01; Bala, 909 S.W.2d at 892. With respect
to the claims allegedly occurring on or after February 27, 2000, to survive the no-evidence summary-judgment challenge, Streich must have adduced competent
evidence that Dr. Dougherty deviated from the articulated standard of care. (1)
 See
Hightower, 54 S.W.3d at 389; Rodriguez, 730 S.W.2d at 21. 

 In his live pleading, Streich alleged generally that "[a]s a result of the negligent
acts on the part of Defendants, [he] suffered injuries and damages." In his
summary-judgment response, Streich maintained that he received medical treatment
from Dr. Dougherty "until March 2, 2000," when he learned of the lytic lesion, and
"until April 17, 2000" after a second surgery. Further, Streich maintained that Dr.
Dougherty deviated from the standard of care by not performing certain exams that
would have detected the lytic lesion. Streich pointed to his expert's deposition
testimony (appended as an exhibit to the response) as to Dr. Dougherty's alleged
failure to diagnose the lytic lesion. With respect to the deviation from the standard of
care element, Streich's expert's deposition testimony stated as follows: 

 The standard calls for a dialysis patient who undergoes progressive
disability and pain to find out why in the simplest of terms, and this was
not done. . . . Better imaging studies by the radiology departments. . .
. It's the job of the nephrologist to make sure he can live as reasonably
normal life as is possible. . . . [b]e constantly vigilant for infections. . . . 
When someone develops a disability or severe pain, the patient is entitled
to the standard of care that calls for the nephrologist to find out why that
is happening and what to do about it, and this is what was not done. .
. . [Streich] had major disability, major problems, obvious signs of what
was going on. It was never worked up, never diagnosed, and not
treated. It's the job of the nephrologist to make sure that those things
don't happen. . . . [Dr. Dougherty] did not obtain consultation from a
neurosurgeon or neurologist as to what this disability might have been
due to. I feel reasonably certain that had a good neurologist been
consulted on this and ordered the appropriate tests, they would have
figured out just what was going on. I mentioned the neuroradiology
department suggested additional imaging studies, and they were ignored. 
. . . [Dr. Dougherty] never did bone scans or indium scans or gallium
scans. (2)


Streich provided a summary-judgment affidavit from another expert attesting that
Streich could not have discovered the "improperly identified" results of the CT scan
"until March 2, 2002, when further diagnostic testing was done . . . ." 

 I have already concluded that the applicable statute of limitations barred
complained-of torts before February 27, 2000. As to complaints from that date
forward, I would hold that Streich did not adduce competent summary-judgment
evidence to prove Dr. Dougherty deviated from the standard of care. The sole
complaint in Streich's affidavit as to Dr. Dougherty was the physician's communication
of the results of a CT scan, allegedly improperly read by another physician. Streich's
expert's affidavit stated that, on March 2, 2000, "further diagnostic testing was done"
and revealed the lytic lesion. His other expert's articulated standard of care indicated
the need for further diagnostic testing. As demonstrated by Streich's own evidence,
"further diagnostic testing" occurred during the relevant period. Streich does not
dispute that Dr. Dougherty requested the additional testing that led to the surgery
disclosing the lytic lesion. Because Streich's summary-judgment evidence does not
demonstrate that Dr. Dougherty deviated from the standard of care, the trial court
properly granted the physician's no-evidence summary judgment motion. See Tex. R.
Civ. P. 166a(i); Hightower, 54 S.W.3d at 390; Rodriguez, 730 S.W.2d at 21. 

CONCLUSION

 Because I would hold that the trial court properly granted Dr. Dougherty's no-evidence summary-judgment motion on his limitations defense and on the element of
deviation of the standard of care, I would overrule the sole issue presented and affirm.


 ERRLINDA CASTILLO

 Justice


Dissenting Memorandum Opinion delivered

and filed this the 24th day of August, 2006. 


1. In his summary-judgment response as to the standard of care, Streich focused on excerpts
from his expert's deposition testimony. Review of Streich's expert's testimony shows that, with the
symptoms presented, the standard of care required the following: (1) conducting more tests, including
an MRI of the spinal column or gallium or indium scans to localize the site of the abscess; (2) obtaining
a blood culture; (3) ordering bone scans; and, (4) "When one has progressive disability or continued pain
it is obligatory on the managing physician to find out why and what is going wrong, and this was not
done." 

2. Streich's expert also testified that "pus would not have been picked up easily by a gallium scan
or even a good MRI."