COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-300-CV
  
  
JERRY 
M. GILBERT AND                                                      APPELLANTS
DOLORES 
L. GILBERT
  
V.
  
DANNY 
R. BARTEL, M.D., NORTH                                            APPELLEES
TEXAS 
NEUROLOGY ASSOCIATES,
INC., 
AND NORTH TEXAS NEUROLOGY
ASSOCIATES, 
L.L.P.
  
  
------------
 
FROM 
THE 30TH DISTRICT COURT OF WICHITA COUNTY
 
------------
 
OPINION
 
------------
        The 
issue in this case is whether limitations bars the Appellants’ medical 
malpractice claims. Appellants, the Gilberts, sued Appellees Dr. Danny R. 
Bartel, individually, and North Texas Neurology Associates, L.L.P. and North 
Texas Neurology Associates, Inc. vicariously (collectively Bartel), claiming 
Bartel negligently diagnosed Mrs. Gilbert’s cancer and neglected to provide 
adequate treatment.  The trial court granted Bartel’s motion for summary 
judgment, which alleged that the Gilberts did not file suit within two years of 
the tort or breach, as the Medical Liability and Insurance Improvement Act 
requires.[1]  The Gilberts argue that their 
claims are not barred and request that we reverse and remand the case for 
trial.  We disagree.  Because we hold that article 4590i section 10.01 
bars the Gilberts’ claims, we affirm the trial court’s judgment.
Background
        In 
late July 1998, Mrs. Gilbert was suffering from back pain and went to a 
chiropractor.  On October 28, 1998, Mrs. Gilbert was hospitalized for 
continuing lower back pain.  Bartel, her attending physician, examined Mrs. 
Gilbert and ordered x-rays, a bone scan, an MRI, and a lumbar myelogram. The 
initial x-ray showed a compression fracture.  The radiologist who 
interpreted the scan found no evidence of spinal stenosis or other neural 
compromise but noted the “very abnormal appearance” of the bony structures, 
which he described as “severely osteoporotic” and “almost moth-eaten,” 
suggesting either “diffuse severe osteoporosis is present, or metabolic bone 
disease or perhaps even neoplasm such as multiple myeloma.”  Although he 
recommended clinical correlation of these findings, the radionuclide bone scan 
had already ruled out myeloma.  Bartel concluded that Mrs. Gilbert’s pain 
was attributed to both osteoporosis and a compression fracture.  Bartel 
discharged her from the hospital on November 13, 1998.
        Continuing 
to experience lower back pain, Mrs. Gilbert returned to Bartel for additional 
diagnostic tests and treatment throughout the next two years. The additional 
diagnostic studies she underwent included the following: (1) Dexa scan of the 
lumbar spine and AP of the spine on November 30, 1998; (2) MRI of the lumbar 
spine on January 5, 1999; (3) bone density analysis on April 14, 1999; (4) MRI 
of the lumbar spine on November 24, 1999; (5) myelogram and CT scan of the 
lumbar spine on December 7, 1999; (6) Dexa scan of the lumbar spine and left 
femoral neck on December 15, 1999; and (7) electromyelogram on December 14, 
2000.  Bartel saw Mrs. Gilbert in his office on December 10, 1998, March 8, 
1999, June 1, 1999, and December 5, 2000.  Based upon these additional 
studies and office visits, Bartel treated Mrs. Gilbert for lower back pain due 
to osteoporosis and a compression fracture. Bartel suggested that Mrs. Gilbert 
see a neurosurgeon for surgery.  She saw the neurosurgeon but refused 
surgery, requesting less invasive treatment.
        Early 
on in the two-year treatment, Bartel began to suspect that Mrs. Gilbert’s back 
was broken due to osteoporosis and manipulations received from her 
chiropractor.  Based on Bartel’s diagnosis that Mrs. Gilbert’s 
chiropractor was at least partially responsible for her broken back, the 
Gilberts sued the chiropractor using Bartel as an expert.
        On 
January 22, 2001, Mrs. Gilbert was hospitalized for right shoulder and left hip 
pain.  After reviewing the shoulder and hip x-rays, Bartel suggested that 
Gilbert see an oncologist.  On January 26, 2001, the oncologist diagnosed 
Gilbert with bone marrow cancer.
        On 
February 28, 2001, represented by counsel, the Gilberts filed suit against 
Bartel, the hospital, and other physicians for failing to diagnose her with 
cancer prior to her second hospitalization on January 21, 2001.  More 
specifically, the Gilberts complained that, based upon a review of the records 
of the first hospitalization by the oncologist who made the diagnosis, the 
myelogram studies and lab work performed in 1998 “showed multiple myeloma in 
the early stages that should have been diagnosed and treated.”  On 
December 5, 2001, the Gilberts voluntarily nonsuited all their claims against 
all defendants.
        On 
January 15, 2003, thirteen months later, the Gilberts filed this pro se suit 
against Bartel that is almost identical to the suit filed in February 
2001.  Bartel then filed a motion for summary judgment on the ground that 
the statute of limitations had run on the Gilberts’ claims.  The trial 
court granted summary judgment on all the Gilberts’ claims.
        The 
Gilberts now file this pro se appeal raising nineteen issues.  We construe 
the Gilberts’ issues as alleging basically that (1) the trial court erred by 
granting summary judgment on the health care liability claims based on the 
limitations ground because Bartel’s failure to diagnose Mrs. Gilbert’s 
cancer while treating her for an osteoporotic fracture of her spine constituted 
a continuing course of treatment for purposes of determining when the statute of 
limitations began to run; (2) it was impossible or exceedingly difficult for the 
Gilberts to discover the nature of Mrs. Gilbert’s injury and bring suit before 
limitations barred their claims, and the Gilberts brought suit within a 
reasonable period of time after discovering the nature of Gilbert’s injury; 
and (3) Bartel fraudulently concealed the nature of Gilbert’s 
injury.   Additionally, the Gilberts argue that the trial court abused 
its discretion by sustaining Bartel’s objections to all of their evidence 
presented in response to Bartel’s motion for summary judgment.
Summary 
Judgment Standard of Review
        In 
a summary judgment case, the issue on appeal is whether the movant met his 
summary judgment burden by establishing that no genuine issue of material fact 
exists and that the movant is entitled to judgment as a matter of law.[2]  The burden of proof is on the movant, and all doubts 
about the existence of a genuine issue of material fact are resolved against the 
movant.[3]  Therefore, we must view the evidence 
and its reasonable inferences in the light most favorable to the nonmovant.[4]
        In 
deciding whether there is a material fact issue precluding summary judgment, all 
conflicts in the evidence are disregarded and the evidence favorable to the 
nonmovant is accepted as true.[5]  Evidence that 
favors the movant’s position will not be considered unless it is 
uncontroverted.[6]  The summary judgment will be 
affirmed only if the record establishes that the movant has conclusively proved 
all essential elements of the movant's cause of action or affirmative defense as 
a matter of law.[7]
Limitations for 
Medical Negligence Claims
        Article 
4590i, section 10.01 establishes an absolute two-year statute of limitations for 
health care liability claims.[8]  Section 4.01(a) 
of article 4590i requires any person asserting a health care liability claim to 
give written notice of the claim to each physician and health care provider at 
least sixty days before filing suit.[9]  Notice 
given in accordance with section 4.01(a) tolls the applicable statute of 
limitations for seventy-five days, effectively creating a 
two-year-and-seventy-five-day statute of limitations.[10]  
The limitations period for medical negligence claims is measured from one of 
three dates: (1) the occurrence of the breach or tort; (2) the last date of the 
relevant course of treatment; or (3) the last date of the relevant 
hospitalization.[11]  The Texas Supreme Court 
has repeatedly held that a plaintiff may not choose the most favorable date that 
falls within section 10.01’s three categories.[12]  
Rather, if the date the alleged tort occurred is ascertainable, limitations must 
begin on that date.[13]  Thus, if the date is 
ascertainable, further inquiry into the second and third categories is 
unnecessary.[14]
        There 
may be instances when the exact date the alleged tort occurred cannot be 
ascertained. [15] In that situation, the statute resolves doubts 
about the time of accrual in the plaintiff’s favor by using the last date of 
treatment or hospitalization as a proxy for the actual date of the tort.[16]  Before the last date of treatment becomes relevant 
to determining when limitations begins, however, the plaintiff must establish a 
course of treatment for the alleged injury.[17] 
Furthermore, if the defendant committed the alleged tort on an ascertainable 
date, whether the plaintiff established a course of treatment is immaterial 
because limitations begins to run on the ascertainable date.[18]
        The 
primary issue of disagreement between the parties, and the issue we must first 
resolve, is the date the limitations period began.  In this case, the 
Gilberts argue that the specific date of the alleged tort cannot be ascertained 
and that the alleged tort occurred during a continuing course of treatment, 
which started on October 28, 1998—when Bartel first examined Mrs. Gilbert in 
the hospital—and continued until January 25, 2001—when Bartel examined Mrs. 
Gilbert for the last time during her second hospitalization.  The Gilberts 
therefore assert that the limitations period did not begin until the last date 
of treatment, January 25, 2001, and that this suit is not barred by the statute 
of limitations.  Conversely, Bartel contends that the date of the alleged 
negligence is readily ascertainable and that the limitations period began on 
October 30, 1998, the most recent date of the only tests that marginally 
suggested cancer.
Negligent 
Diagnosis Claim
        The 
Gilberts’ petition essentially alleges two claims: negligence and gross 
negligence for the failure to properly diagnosis and treat Mrs. Gilbert for 
cancer. The Gilberts allege that Bartel should have known Mrs. Gilbert had 
cancer after reviewing multiple tests conducted while she was hospitalized the 
first time and before releasing her from the hospital on November 13, 1998.
        The 
Gilberts contend that Bartel was negligent in not taking actions that would have 
led to earlier discovery of Mrs. Gilbert’s cancer. Bartel could have possibly 
been negligent by failing to conduct proper screening, to recognize symptoms of 
cancer, or to refer Mrs. Gilbert to a specialist only on those occasions when he 
saw her or when he ordered diagnostic tests:[19]
 
October 
28–November 13, 1998 hospitalization;
November 
30, 1998 Dexa scan of the lumbar spine and AP of the spine;
December 
10, 1998 office visit;
January 
5, 1999 MRI of the lumbar spine;
March 
8, 1999 office visit;
April 
14, 1999 bone density analysis;
June 
1, 1999 office visit;
November 
24, 1999 MRI of the lumbar spine;
December 
7, 1999 myelogram and CT scan of the lumbar spine;
December 
15, 1999 Dexa scan of the lumbar spine and left femoral neck;
December 
5, 2000 office visit;
December 
14, 2000 electromyelogram; and
January 
21–25, 2001 hospitalization.

 
We 
conclude that the dates of Bartel’s alleged negligence are readily 
ascertainable and that it is therefore immaterial whether Bartel established a 
course of treatment for Mrs. Gilbert’s back pain.[20]
        Although 
we would normally look at each ascertainable date to determine whether the 
limitations period could have begun on any of those dates, the Gilberts failed 
to affirmatively argue that the limitations period began on any dates other than 
November 13, 1998 and January 25, 2001.[21]  
Rather, the Gilberts argued in the trial court only that these dates establish 
Bartel’s course of treatment for Mrs. Gilbert and that the limitations period, 
therefore, should be measured from the last date of that treatment, January 25, 
2001.  Therefore, we must only examine the November 13, 1998 and January 
25, 2001 dates.[22]
        Viewing 
the evidence in the light most favorable to the Gilberts, there is an issue of 
fact about whether Bartel committed the alleged tort on November 13, 1998, by 
failing to recognize the possibility of cancer from tests done during Mrs. 
Gilbert’s first hospitalization and releasing her from the hospital.  
Thus, November 13, 1998 is a tort date for which the limitations period may be 
measured.
        On 
the second date, January 25, 2001, Bartel referred Mrs. Gilbert to an oncologist 
for testing that detected Mrs. Gilbert’s cancer.  Thus, the limitations 
period is not measured from January 25, 2001 because that date is not the date 
of the alleged tort.[23]  On January 25, 2001, 
Bartel did exactly what Appellants contend he should have done previously—he 
examined Mrs. Gilbert and referred her to an oncologist for additional 
examinations, which led to the discovery of her cancer.  Because Bartel did 
not commit the alleged tort on January 2001, the limitations period could not 
have begun on that date.[24]
        In 
this case, the date of Bartel’s alleged negligence is readily 
ascertainable.  It is therefore immaterial whether Bartel established a 
course of treatment for Mrs. Gilbert’s back injury.[25]  
Thus, because the alleged tort date, November 13, 1998, is ascertainable and the 
Gilberts did not file suit within two years of that date, article 4590i, section 
10.01 bars the Gilberts’ negligent diagnosis claim.  Furthermore, 
although Bartel concedes that the Gilberts sent notice of their claim, they may 
not use the seventy-five day tolling provision in section 4.01(c) because they 
filed suit after the statute of limitations had already expired.[26]  Consequently, the trial court did not err by 
granting Bartel’s motion for summary judgment on the negligent diagnosis 
claim.
Negligent 
Treatment Claim
        The 
Gilberts allege that the summary judgment evidence demonstrated a course of 
treatment that Bartel administered for Mrs. Gilbert’s back problems.  
They further allege that, because there was some evidence that the January 2001 
hospitalization examination for hip and shoulder pain related to the continuing 
relationship between Bartel and Mrs. Gilbert to treat Mrs. Gilbert’s back 
pain, there was a fact issue about when the course of treatment for her back 
pain ended.  We disagree.
        Because, 
as we hold above, the date the alleged tort or breach took place is 
ascertainable, a course of treatment analysis is immaterial to determining when 
limitations began to run.[27] It is also unimportant 
to our inquiry whether the tort is characterized as a failure to diagnose cancer 
or as an improper course of treatment based on a misdiagnosis.[28]  
The Gilberts’ complaint is that Bartel was negligent in not taking 
actions—testing, referrals to specialists, proper examinations—that would 
have led to earlier discovery of Mrs. Gilbert’s cancer.  Those events, or 
nonevents, occurred on specific ascertainable dates.[29]  
The Texas Supreme Court has held that when a physician fails to diagnose a 
condition, the continuing nature of the diagnosis does not extend the tort for 
limitations purposes.[30] “‘While the failure to 
treat a condition may well be negligent, we cannot accept the self-contradictory 
proposition that the failure to establish a course of treatment is a course of 
treatment.’”[31]  Furthermore, neither the 
mere continuing relation between physician and patient nor the continuing nature 
of a diagnosis is sufficient to create a course of treatment.[32]
        In 
this case, Bartel treated Mrs. Gilbert for osteoporosis and a compression 
fracture.  The Gilberts agree that Bartel’s diagnosis of Mrs. Gilbert’s 
compression fracture was correct and that he continued to treat her for a 
osteoporosic compression fracture.  Thus, they do not allege that 
Bartel’s course of treatment was not proper for osteoporosis and a compression 
fracture.  Rather they allege that the treatment was not proper for cancer, 
which they allege he negligently failed to diagnose.  Consequently, because 
as set forth above, the dates of Bartel’s alleged negligence are 
ascertainable, and thus a course of treatment analysis is immaterial, we hold 
that the trial court did not err by granting Bartel’s motion for summary 
judgment on the Gilberts’ negligent treatment claim when the only measurable 
limitations date argued by the Gillberts is November 13, 1998, which fell more 
than two years before the date of suit.
Fraudulent 
Concealment
        Fraudulent 
concealment in medical negligence cases estops a health-care provider from 
relying on limitations to bar a plaintiff’s claim.[33] 
The plaintiff must show the health-care provider actually knew a wrong occurred, 
had a fixed purpose to conceal the wrong, and did conceal the wrong from the 
patient.[34]  Fraudulent concealment tolls 
limitations until the plaintiff discovers the fraud or could have discovered the 
fraud with reasonable diligence.[35]
        The 
Texas Supreme Court has held that article 4590i, section 10.01 “does not 
abolish fraudulent concealment as an equitable estoppel to the affirmative 
defense of limitations.”[36]  A plaintiff who 
asserts fraudulent concealment to avoid summary judgment on limitations grounds 
must raise a fact issue that would support this assertion.[37]
        In 
this case, the Gilberts argue that limitations does not bar their claims because 
Bartel fraudulently concealed the negligent nature of his misdiagnosis from the 
October 1998 tests.  The Gilberts claim that when Bartel suspected the 
cancer in January 2001, Bartel actually knew he committed malpractice in failing 
to diagnose the cancer earlier.  The Gilberts contend that Bartel’s 
explanations about Mrs. Gilbert’s failure to improve from the compression 
fracture followed by the diagnosis of cancer when Mrs. Gilbert was hospitalized 
for shoulder and hip pain were designed to conceal this negligence.  
Furthermore, the Gilberts argue that Bartel’s summary judgment motion did not 
consider the fraudulent concealment allegations, and therefore, the trial 
court’s judgment should be reversed and remanded.  We disagree.
        The 
Gilberts’ contention that Bartel’s summary judgment motion did not consider 
the fraudulent concealment claim is without merit.  To avoid summary 
judgment on limitations grounds, the Gilberts must have raised a fact issue to 
support their fraudulent concealment assertion.[38]  
The Gilberts had to raise a fact issue showing Bartel knew the Gilberts had been 
wronged and concealed that fact to deceive them.[39]
        In 
this case, although the Gilberts allege that the trial court erred by sustaining 
Bartel’s objections to their evidence, our review of the record shows that the 
Gilberts failed to offer any admissible evidence.[40]  
Accordingly, the Gilberts did not raise a fact issue demonstrating that Bartel 
knew about the alleged negligence and that he concealed this wrong to deceive 
them.  Because the Gilberts did not raise a fact issue to support their 
fraudulent concealment claim, the limitations period was not tolled and 
limitations bars their claims.[41]
The Texas 
Constitution’s Open Courts Provision
        The 
Texas Constitution guarantees that persons bringing common-law claims will not 
unreasonably or arbitrarily be denied access to the courts.[42]  
A statute that unreasonably or arbitrarily abridges a person’s right to obtain 
redress for injuries that another person’s harmful act causes is an 
unconstitutional due course of law violation.[43]  
Consequently, our constitution’s open courts provision protects a person from 
legislative acts that cut off a person’s right to sue before there is a 
reasonable opportunity to discover the wrong and bring suit.[44]  
The legislature cannot abrogate the right to bring a well-established common-law 
claim without showing that the statute’s objectives and purposes outweigh 
denying the constitutionally guaranteed right of redress.[45]
        To 
establish an open courts violation in an article 4590i case, a litigant must 
first show a cognizable, common-law claim that article 4590i’s limitations 
provision restricts.[46]  The litigant must then 
show that the restriction is unreasonable or arbitrary when balanced against the 
statute’s purpose and basis.[47] The limitations 
provision in article 4590i, section 10.01 does not violate the open courts 
guarantee if the plaintiff had a reasonable opportunity to discover the alleged 
wrong and bring suit before the limitations period expired.[48]
        The 
Gilberts argue that our constitution’s open courts provision precludes article 
4590i, section 10.01 from barring their negligence claims.[49]  
The Gilberts allege that they did not learn about the cancer until two years 
after Mrs. Gilbert’s first hospitalization when Bartel began treating her for 
osteoporosis and the compression fracture.  They filed suit against Bartel 
just over a month after learning of the cancer but then nonsuited the 
case.  They then waited an additional thirteen months before filing this 
suit.  The Gilberts contend, however, that the two-year limitations period 
should not bar their claims because they did not know there was a causal 
connection between Bartel’s misdiagnosis and Mrs. Gilbert’s cancer until 
after the hospitalization in January 2001.
        In 
this case, the Gilberts’ negligence claims against Bartel are examples of 
well-established medical malpractice common-law claims.[50]  
The Texas Supreme Court has held that article 4590i, section 10.01 bars these 
claims.[51]  Therefore, it was the Gilberts’ 
burden to raise a fact issue demonstrating that they did not have a reasonable 
opportunity to discover the alleged wrong before the limitations period expired 
to trigger the open courts guarantee.[52]  
Because the Gilberts failed to present any admissible evidence to support their 
claims, they have not met their burden to raise an issue of fact on this point.
        Additionally, 
even if we take as true the Gilberts’ assertion that they could not have sued 
within the two-year limitations period because they did not discover Bartel’s 
negligence until Mrs. Gilbert’s last hospital visit in January 2001, the open 
courts provision does not save the Gilberts’ claims.  A plaintiff may not 
obtain relief under the open courts provision if he does not use due diligence 
and sue within a reasonable time after learning about the alleged wrong.[53]
        Here, 
the summary judgment evidence shows that the Gilberts knew about the alleged 
injury, Mrs. Gilbert’s cancer, when they first brought suit against Bartel at 
least thirteen months before bringing this suit.  The Gilberts offer no 
justifiable or excusable explanation for their delay in bringing this second 
suit.  Therefore, the Gilberts did not raise a fact issue establishing that 
they did not have a reasonable opportunity to discover the alleged wrong and 
bring suit within the limitations period or that they sued within a reasonable 
time after discovering the alleged wrong.[54] Thus, 
the open courts provision does not apply to save the Gilberts’ time-barred 
negligence claims.[55]  Accordingly, the trial 
court did not err by holding that limitations barred the Gilberts’ claims.
Conclusion
        Having 
held that article 4590i, section 10.01 bars the Gilberts’ negligent and gross 
negligent diagnosis and treatment claims, and that the Gilberts did not raise a 
fact issue to support their fraudulent concealment allegation or their 
contention that our open courts provision saves their negligence claims, we 
overrule each of the Gilberts’ nineteen issues.  We affirm the trial 
court’s judgment.
 
 
                                                          LEE 
ANN DAUPHINOT
                                                          JUSTICE
  
 
PANEL B:   DAUPHINOT, 
HOLMAN, and MCCOY, JJ.
DELIVERED: 
July 15, 2004


NOTES
1.  
See Act of May 30, 1977, 65th Leg., R.S., ch. 817, 1977 Tex. Gen. Laws 
2039, 2052 (former Tex. Rev. Civ. Stat. 
art. 4590i, § 10.01), repealed by Act of June 2, 2003, 78th Leg., R.S., 
ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 884 (current version at Tex. Civ. Prac. & Rem. Code Ann. § 
74.251 (Vernon 2004)).  This action was filed January 15, 2003, before the 
new Act’s September 1, 2003, effective date.  This opinion will refer to 
the former statute as article 4590i.
2.  
Tex. R. Civ. P. 166a(c); S.W. 
Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002); City of Houston 
v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979).
3.  
S.W. Elec. Power Co., 73 S.W.3d at 215; Rhone-Poulenc, Inc. v. Steel, 
997 S.W.2d 217, 223 (Tex. 1999); Great Am. Reserve Ins. Co. v. San Antonio 
Plumbing Supply Co., 391 S.W.2d 41, 47 (Tex. 1965).
4.  
Great Am., 391 S.W.2d at 47.
5.  
Rhone-Poulenc, 997 S.W.2d at 223; Harwell v. State Farm Mut. Auto. 
Ins. Co., 896 S.W.2d 170, 173 (Tex. 1995).
6.  
Great Am., 391 S.W.2d at 47.
7.  
Clear Creek Basin, 589 S.W.2d at 678; KPMG Peat Marwick v. Harrison 
County Hous. Fin. Corp., 988 S.W.2d 746, 748 (Tex. 1999); Ryland Group, 
Inc. v. Hood, 924 S.W.2d 120, 121 (Tex. 1996).
8.  
Act of May 30, 1977, 65th Leg., R.S., ch. 817, 1977 Tex. Gen. Laws 2039, 2052 
(repealed 2003).
9.  
Act of May 30, 1977, 65th Leg., R.S., ch. 817, 1977 Tex. Gen. Laws 2039, 2048 
(former Tex. Rev. Civ. Stat. art. 
4590i, § 4.01), repealed by Act of June 2, 2003, 78th Leg., R.S., ch. 
204, § 10.09, 2003 Tex. Gen. Laws 847, 884 (current version at Tex. Civ. Prac. & Rem. Code Ann. § 
74.051 (Vernon 2004)).
10.  
Act of May 30, 1977, 65th Leg., R.S., ch. 817, 1977 Tex. Gen. Laws 2039, 2048 
(repealed 2003); De Romo v. St. Mary Hosp. Found., 843 S.W.2d 72, 75 
(Tex. App.—Amarillo 1992, writ denied).
11.  
Act of May 30, 1977, 65th Leg., R.S., ch. 817, 1977 Tex. Gen. Laws 2039 
(repealed 2003); Shah v. Moss, 67 S.W.3d 836, 841 (Tex. 2001).
12.  
Shah, 67 S.W.3d at 841; Earle v. Ratliff, 998 S.W.2d 882, 886 
(Tex. 1999); Husain v. Khatib, 964 S.W.2d 918, 919 (Tex. 1998); Bala 
v. Maxwell, 909 S.W.2d 889, 891 (Tex. 1995).
13.  
Shah, 67 S.W.3d at 841; Rogers v. United Reg’l Health Care Sys., 
109 S.W.3d 47, 50 (Tex. App.—Fort Worth 2003, no pet.); Karley v. Bell, 
24 S.W.3d 516, 520 (Tex. App.—Fort Worth 2000, pet. denied).
14.  
Shah, 67 S.W.3d at 841.
15.  
Id.
16.  
Rogers, 109 S.W.3d at 51.
17.  
Shah, 67 S.W.3d at 841.
18.  
Id.
19.  
See Bala, 909 S.W.2d at 892; Rowntree v. Hunsucker, 833 S.W.2d 
103, 108 (Tex. 1992).
20.  
See Husain, 964 S.W.2d at 919.
21.  
See Karley, 24 S.W.3d at 520.
22.  
See id. at 521.
23.  
See id.
24.  
See Husain, 964 S.W.2d at 920; Bala, 909 S.W.2d at 892; Voegtlin 
v. Perryman, 977 S.W.2d 806, 811 (Tex. App.—Fort Worth 1998, no pet.).
25.  
See Shah, 67 S.W.3d at 841.
26.  
Rogers, 109 S.W.3d at 51.
27.  
See Shah, 67 S.W.3d at 841.
28.  
Husain, 964 S.W.2d at 920.
29.  
See id.
30.  
Bala, 909 S.W.2d at 892; Rowntree, 833 S.W.2d at 108.
31.  
Bala, 909 S.W.2d at 892; Rowntree, 833 S.W.2d at 105-06; see 
also Husain, 964 S.W.2d at 919; Kimball v. Brothers, 741 S.W.2d 370, 
372 (Tex. 1987); Chambers v. Conaway, 883 S.W.2d 156, 158 (Tex 1993).
32.  
Rowntree, 833 S.W.2d at 105.
33.  
Id.
34.  
Id.
35.  
Id.; Velsicol Chem. Corp. v. Winograd, 956 S.W.2d 529, 531 (Tex. 
1997).
36.  
Shah, 67 S.W.3d at 841; Borderlon v. Peck, 661 S.W.2d 907, 909 
(Tex. 1983).
37.  
Shah, 67 S.W.3d at 841.
38.  
See id. at 846.
39.  
See id.
40.  
Tex. R. Civ. P. 166a(f); United 
Blood Servs. v. Longoria, 938 S.W.2d 29, 30 (Tex. 1997); Town N. Nat’l 
Bank v. Broaddus, 569 S.W.2d 489, 494 (Tex. 1978); Abe’s Colony Club, 
Inc. v. C&W Underwriters, Inc., 852 S.W.2d 86, 88 (Tex. App.—Fort 
Worth 1993, writ denied).  See generally Hon. David Hittner & 
Lynne Liberato, Summary Judgments in Texas, 34 Hous. L. Rev. 1303, 1337-44 (1998), for 
a discussion of proper affidavits in the summary judgment context.
41.  
See Shah, 67 S.W.3d at 846.
42.  
Tex. Const. art. 1, § 13 (“All 
courts shall be open, and every person for an injury done him, in his lands, 
goods, person or reputation, shall have remedy by due course of law.”); Shah, 
67 S.W.3d at 841; Jennings v. Burgess, 917 S.W.2d 790, 793 (Tex. 1996).
43.  
Shah, 67 S.W.3d at 842; Earle, 998 S.W.2d at 889; Jennings, 
917 S.W.2d at 793.
44.  
Shah, 67 S.W.3d at 842.
45.  
Id.; Weiner v. Wasson, 900 S.W.2d 316, 318 (Tex. 1995); Sax v. 
Votteler, 648 S.W.2d 661, 665–66 (Tex. 1983).
46.  
Shah, 67 S.W.3d at 842.
47.  
Id.
48.  
Id.
49.  
See Tex. Const. art. I, § 
13.
50.  
See Shah, 67 S.W.3d at 846.
51.  
Id.
52.  
See id. at 846–47.
53.  
Id. at 847; Voegtlin, 977 S.W.2d at 812; Fiore v. HCA Health 
Servs. of Tex., Inc., 915 S.W.2d 233, 237 (Tex. App.—Fort Worth 1996, writ 
denied).
54.  
See Shah, 67 S.W.3d at 847.
55.  
See id. at 847; see also Fiore, 915 S.W.2d at 237; Hall v. Dow 
Corning Corp., 114 F.3d 73, 77 (5th Cir. 1997) (applying Texas law to hold 
that a fifteen-month delay was excessive as a matter of law).