**Matthew KARLEY and Autumn Wernick, Appellants,**

v.

**J. Ardis BELL, M.D., Family Healthcare Associates, Family Healthcare Associates of Northeast Tarrant County, and Northeast Medical Clinic Association, Appellees.**

No. 2–99–022–CV.

Court of Appeals of Texas, Fort Worth.

June 29, 2000.

Rehearing Overruled Aug. 10, 2000.

Friedman & Franks, P.C., Jack Friedman, Fort Worth, for Appellant.

Watson, Caraway, Harrington, Nelson, Midkiff & Luningham, L.L.P., Jonathan D.F. Nelson, Vickie Rainwater, Cantey & Hanger, L.L.P., Larry Hayes, Evelyn R. Leopold, Fort Worth, for Appellee.

PANEL A: CAYCE, C.J.; DAY and DAUPHINOT, JJ.

## OPINION

LEE ANN DAUPHINOT, Justice.

### INTRODUCTION

In this medical malpractice case, Matthew Karley and Autumn Wernick (collectively, Appellants) appeal from the trial court's order granting summary judgment based on limitations in favor of Dr. J. Ardis Bell, Family Healthcare Associates, Family Healthcare Associates of Northeast Tarrant County, and Northeast Medical Clinic Association (collectively, Appellees). Because we hold that Appellees established as a matter of law that Appellants' suit is barred by the applicable statute of limitations, we affirm the trial court's order granting summary judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

In April 1993, Shirlee Karley (Karley) began experiencing rectal pain and bleeding. Dr. Bell first examined Karley on April 23, 1993, at which time he diagnosed hemorrhoids and gave her a prescription for Anusol. Karley obtained a refill of Anusol on June 5, 1993. An entry in Karley's chart indicates that on June 22, 1994, Dr. Bell reviewed her chart and called in a refill of Anusol to an Eckerd pharmacy. The parties are in dispute about whether Dr. Bell saw Karley between April 23, 1993 and September 21, 1994. Although Karley contended in her deposition that she had office visits with Dr. Bell on two occasions within these dates, neither she nor Dr. Bell had any record of such visits.

On September 21, 1994, Karley saw Dr. Bell about a lump she had discovered in her right breast and her ongoing problem with rectal bleeding. Still believing that Karley's rectal bleeding was due to hemorrhoids, Dr. Bell again prescribed Anusol. On October 10, 1994, Dr. Bell re-examined Karley, prescribed Anaprox, and advised her to consult a surgeon about possible surgery on her hemorrhoids. Karley saw a surgeon, Dr. James Poettecker, on October 14, 1994, at which time he performed a digital rectal examination and discovered a substantial mass. Dr. Poettecker biopsied the mass and diagnosed colorectal cancer. On October 20, 1994, Karley had surgery to remove the malignant tumor, and doctors discovered that her cancer had metastasized to several of her organs, including her liver.

Karley sent notice of her intent to file a health care liability claim to Dr. Bell on September 12, 1996 and filed suit against Appellees on October 15, 1996. Karley died on June 22, 1997. On January 29, 1998, the trial court signed an order allowing Karley's children, Appellants, to continue the lawsuit in their representative capacities in the place of Karley and in their own right. Appellees filed motions for summary judgment, arguing that the suit was barred by the applicable two-year statute of limitations. The trial court granted the motions for summary judgment. In five issues on appeal, Appellants argue that the suit was filed within the applicable statute of limitations and that, therefore, the trial court erred in granting summary judgment for Appellees on the basis of limitations.

## STANDARD OF REVIEW

In a summary judgment case, the issue on appeal is whether the movant met his summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.[1] The burden of proof is on the movant, and all doubts about the existence of a genuine issue of material fact are resolved against the movant.[2] Therefore, we must view the evidence and its reasonable inferences in the light most favorable to the nonmovant.[3]

In deciding whether there is a material fact issue precluding summary judgment, all conflicts in the evidence are disregarded and the evidence favorable to the nonmovant is accepted as true.[4] Evidence that favors the movant's position will not be considered unless it is uncontroverted.[5] The summary judgment will be affirmed

1. *See* Tex.R. Civ. P. 166a(c); *Calvillo v. Gonzalez,* 922 S.W.2d 928, 929 (Tex.1996); *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979).

2. *See Friendswood Dev. Co. v. McDade + Co.,* 926 S.W.2d 280, 282 (Tex.1996); *Cate v. Dover Corp.,* 790 S.W.2d 559, 562 (Tex.1990); *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.,* 391 S.W.2d 41, 47 (Tex. 1965).

3. *See Great Am.,* 391 S.W.2d at 47.

4. *See Harwell v. State Farm Mut. Auto. Ins. Co.,* 896 S.W.2d 170, 173 (Tex.1995); *Montgomery v. Kennedy,* 669 S.W.2d 309, 311 (Tex. 1984).

5. *See Great Am.,* 391 S.W.2d at 47.

only if the record establishes that the movant has conclusively proved all essential elements of the movant's cause of action or defense as a matter of law.[6]

In this case, Appellees moved for summary judgment on the affirmative defense of limitations. A defendant is entitled to summary judgment on an affirmative defense if the defendant conclusively proves all the elements of the affirmative defense.[7] To accomplish this, the defendant-movant must present summary judgment evidence that establishes each element of the affirmative defense as a matter of law.[8]

## DISCUSSION

The parties agree that this cause of action is governed by the Medical Liability and Insurance Improvement Act of Texas (the MLIIA).[9] Section 10.01 of the MLIIA establishes an absolute two-year statute of limitations for health care liability claims:

> Notwithstanding any other law, no health care liability claim may be commenced unless the action is filed within two years from the occurrence of the breach or tort or from the date the medical or health care treatment that is the subject of the claim or the hospitalization for which the claim is made is completed.... [10]

■ Section 4.01(a) of the MLIIA requires any person asserting a health care liability claim to give written notice of the claim to each physician and health care provider at least sixty days before filing suit.[11] Notice given in accordance with section 4.01(a) tolls the applicable statute of limitations for seventy-five days, effectively creating a two-year-and-seventy-five-day statute of limitations.[12] Because Karley sent notice of her claim to Appellees, she had two years and seventy-five days from when the limitations period began during which to file suit. Thus, Karley's suit, filed on October 15, 1996, was timely if the limitations period began on or after August 1, 1994.[13]

■ The primary issue on which the parties disagree and that we must resolve is when the limitations period began. Section 10.01 of the MLIIA measures the limitations period from one of three possible dates: (1) the date of the tort; (2) the last date of the relevant course of treatment; or (3) the last date of the relevant hospitalization.[14] Although section 10.01 specifies three possible dates, the Texas Supreme Court has repeatedly held that a plaintiff may not simply choose the most favorable of the three dates.[15] If the date of the negligence can be ascertained, the limitations period must be measured from that date.[16]

In this case, Appellants argue that the specific date of the negligence cannot be ascertained and that Dr. Bell's negligence occurred during a continuing course of treatment, which started on April 23, 1993,

6. *See City of Houston,* 589 S.W.2d at 678.

7. *See Friendswood Dev. Co.,* 926 S.W.2d at 282.

8. *See Ryland Group, Inc. v. Hood,* 924 S.W.2d 120, 121 (Tex.1996).

9. *See* Tex.Rev.Civ. Stat. Ann. art. 4590i, § 1.01 (Vernon Supp.2000).

10. *Id.* § 10.01.

11. *Id.* § 4.01(a).

12. *See id.* § 4.01(c); *De Romo v. St. Mary Hosp. Found.,* 843 S.W.2d 72, 75 (Tex.App.—Amarillo 1992, writ denied).

13. *See Husain v. Khatib,* 964 S.W.2d 918, 919 (Tex.1998) (concluding that respondents' suit filed on November 15, 1994 was timely if limitations period began on or after September 1, 1992 because respondents' giving notice tolled the running of the two-year limitations period for seventy-five days).

14. *See id.*

15. *See Earle v. Ratliff,* 998 S.W.2d 882, 886 (Tex.1999); *Husain,* 964 S.W.2d at 919; *Bala v. Maxwell,* 909 S.W.2d 889, 891 (Tex.1995).

16. *See Earle,* 998 S.W.2d at 886; *Husain,* 964 S.W.2d at 919; *Bala,* 909 S.W.2d at 891.

when Dr. Bell first examined Karley, and continued until October 10, 1994, when Dr. Bell examined Karley for the last time and referred her to a surgeon. Appellants therefore assert that the limitations period did not begin until the last date of treatment, October 10, 1994, and that this suit is not barred by the statute of limitations. Conversely, Appellees contend that the date of Dr. Bell's negligence, if any, is readily ascertainable; that the limitations period began on April 23, 1993, the date of Karley's first visit to Dr. Bell; and that the suit is therefore time barred.

In *Husain*, the Texas Supreme Court addressed a factual scenario analogous to the case now before us.[17] The plaintiffs in *Husain* argued that the doctor was negligent in not taking actions that would have led to earlier discovery of Khatib's cancer.[18] The plaintiffs further asserted that because the negligence occurred during an ongoing course of treatment, the limitations period did not begin until that treatment was completed.[19]

The *Husain* court held that the dates of the doctor's alleged negligence were readily ascertainable and that it was therefore immaterial whether the doctor established a course of treatment:

> It is also unimportant to our inquiry whether the tort is characterized as a failure to diagnose cancer or as an improper course of treatment based on a misdiagnosis of fibrocystic disease. Khatib's complaint is that Husain was negligent in not taking actions—mammograms, referrals to specialists, proper breast examinations—that would have led to earlier discovery of Khatib's cancer. Those events, or non-events, occurred on specific ascertainable dates:

January 25, 1990, and September 26, 1991. On August 25, 1992, Hussain ordered the mammogram that detected Khatib's cancer. Therefore, any negligence could only have occurred at the latest at the September 26, 1991, examination.[20]

■ In the case now before us, Appellants contend that Dr. Bell was negligent in not taking actions that would have led to earlier discovery of Karley's cancer—specifically, conducting or recommending timely, thorough physical examinations. Dr. Bell could have breached his duty to conduct or recommend a complete physical examination only on those occasions when he saw Karley: April 23, 1993; September 21, 1994; and October 10, 1994.[21] We conclude that the dates of Dr. Bell's alleged negligence are readily ascertainable and that it is therefore immaterial whether Dr. Bell established a course of treatment for Karley's rectal pain and bleeding.[22] We now must examine each of these three dates to determine whether the limitations period could have begun on any of these dates.

As for the April 23, 1993 date, Dr. Bell states in his affidavit that in reasonable medical probability, Karley had no detectable cancer on this date. Appellants agree that all medical testimony is to the effect that Karley's cancer did not exist in any detectable degree on April 23, 1993. In fact, Appellants' expert, Dr. Rhett K. Fredric, states in his affidavit in opposition to Appellees' motions for summary judgment, "Because it cannot be said with reasonable medical probability that the fatal disease entity existed in Mrs. Karley on April 23,

---

17. *Husain,* 964 S.W.2d at 918.

18. *Id.* at 920.

19. *Id.* at 919–20.

20. *Id.*

21. *See Bala,* 909 S.W.2d at 892 (concluding that doctor could have breached duty to perform additional tests only when he examined

patient); *Rowntree v. Hunsucker,* 833 S.W.2d 103, 108 (Tex.1992) (holding that doctor could have breached duty to perform proper examinations only on those occasions when he had opportunity to perform such examinations).

22. *See Husain,* 964 S.W.2d at 919.

1993, I cannot say that Dr. Bell failed to diagnose the condition on that date."

■ Appellants therefore concede that as a matter of law any complaint that Dr. Bell was negligent in failing to perform a complete physical examination on April 23, 1993 would fail. We conclude that because the summary judgment evidence conclusively establishes that Karley's cancer did not exist in any detectable degree on April 23, 1993, Dr. Bell could not have breached his duty to conduct or recommend a complete physical examination on that date and that the limitations period therefore could not have begun on that date.[23]

■ The second date is September 21, 1994, when Dr. Bell examined Karley, but did not refer her to a surgeon. Although September 21, 1994 appears to be an ascertainable date within the two-year-and-seventy-five-day limitations period, Appellants have not argued that the limitations period began on this date. Rather, Appellants argued in the trial court and on appeal only that Dr. Bell established a course of treatment for Karley and that the limitations period, therefore, should be measured from the last date of that treatment, October 10, 1994. In fact, Appellants' attorney stated during oral argument that a negligence claim based on the September 21, 1994 visit would be barred and that Appellants prevail only if we determine that based on the course-of-treatment rule, the limitations period began on October 10, 1994. Because Appellants did not expressly present to the trial court the September 21, 1994 date, they cannot now rely on that date to bring their case within the statute of limitations.[24]

■ Furthermore, we have already determined that because the dates of Dr. Bell's negligence, if any, are readily ascertainable, it is not necessary to apply the course-of-treatment rule in this case. Thus, the limitations period is measured from October 10, 1994 only if that date is the date of the alleged tort. On October 10, 1994, Dr. Bell did exactly what Appellants contend he should have done on the previous two visits—he examined Karley and referred her to a surgeon for additional examinations, which led to the discovery of her cancer. Because Dr. Bell did not breach his duty to conduct or recommend a complete physical examination on October 10, 1994, the limitations period could not have begun on that date.[25]

## CONCLUSION

Because Appellees have established each element of the affirmative defense of limitations as a matter of law, summary judgment was proper. We therefore overrule Appellants' issues on appeal and affirm the trial court's order granting summary judgment.

23. *See Bala,* 909 S.W.2d at 892 (noting that negligent failure to conduct follow-up procedures could not have occurred during examination at which no signs of malignancy appeared).

24. *See McConnell v. Southside Indep. Sch. Dist.,* 858 S.W.2d 337, 343 (Tex.1993) (holding that nonmovant must expressly present to trial court, by written answer or response, any issues defeating movant's entitlement to summary judgment); *City of Houston,* 589 S.W.2d at 678 (stating that nonmovant's written answer or response to motion for summary judgment must fairly apprise movant and trial court of issues nonmovant contends should defeat motion).

25. *See Husain,* 964 S.W.2d at 920 (holding that negligence could not have occurred on date doctor ordered mammogram that detected cancer); *Bala,* 909 S.W.2d at 892 (concluding that negligent failure to conduct follow-up procedures could not have occurred in connection with examination at which doctor ordered tests that led to diagnosis of cancer); *Voegtlin v. Perryman,* 977 S.W.2d 806, 811 (Tex.App.—Fort Worth 1998, no pet.) (holding that limitations period could not have begun on date doctor examined lump in patient's breast and recommended biopsy).