Jerry M. GILBERT and Dolores
L. Gilbert, Appellants

v.

Danny R. BARTEL, M.D., North Texas Neurology Associates, Inc., and North Texas Neurology Associates, L.L.P., Appellees.

No. 2–03–300–CV.

Court of Appeals of Texas,
Fort Worth.

July 15, 2004.

Rehearing Overruled Aug. 19, 2004.

**138**

Jerry M. Gilbert and Dolores L. Gilbert, pro se.

J. Wade Birdwell, James G. Stouffer, Jr., and Leslie Dillion Walker; Wallach, Andrews, Florsheim & Stouffer, P.C., Fort Worth, for Appellees.

PANEL B: DAUPHINOT, HOLMAN, and McCoy, JJ.

## OPINION

LEE ANN DAUPHINOT, Justice.

The issue in this case is whether limitations bars the Appellants' medical malpractice claims. Appellants, the Gilberts, sued Appellees Dr. Danny R. Bartel, individually, and North Texas Neurology Associates, L.L.P. and North Texas Neurology Associates, Inc. vicariously (collectively Bartel), claiming Bartel negligently diagnosed Mrs. Gilbert's cancer and neglected to provide adequate treatment. The trial court granted Bartel's motion for summary judgment, which alleged that the Gilberts did not file suit within two years of the tort or breach, as the Medical Liability and Insurance Improvement Act requires.[1] The Gilberts argue that their claims are not barred and request that we reverse and remand the case for trial. We disagree. Because we hold that article 4590i section 10.01 bars the Gilberts' claims, we affirm the trial court's judgment.

### BACKGROUND

In late July 1998, Mrs. Gilbert was suffering from back pain and went to a chiropractor. On October 28, 1998, Mrs. Gilbert was hospitalized for continuing lower back pain. Bartel, her attending physician, examined Mrs. Gilbert and ordered x-rays, a bone scan, an MRI, and a lumbar myelogram. The initial x-ray showed a compression fracture. The radiologist who interpreted the scan found no evidence of spinal stenosis or other neural compromise but noted the "very abnormal appearance" of the bony structures, which he described as "severely osteoporotic" and "almost moth-eaten," suggesting either "diffuse severe osteoporosis is present, or metabolic bone disease or perhaps even neoplasm such as multiple myeloma." Although he recommended clinical correlation of these findings, the radionuclide bone scan had

---

1. See Act of May 30, 1977, 65th Leg., R.S., ch. 817, 1977 Tex. Gen. Laws 2039, 2052 (former Tex.Rev.Civ. Stat. art. 4590i, § 10.01), *repealed by* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 884 (current version at Tex. Civ. Prac. & Rem.Code Ann. § 74.251 (Vernon 2004)). This action was filed January 15, 2003, before the new Act's September 1, 2003, effective date. This opinion will refer to the former statute as article 4590i.

already ruled out myeloma. Bartel concluded that Mrs. Gilbert's pain was attributed to both osteoporosis and a compression fracture. Bartel discharged her from the hospital on November 13, 1998.

Continuing to experience lower back pain, Mrs. Gilbert returned to Bartel for additional diagnostic tests and treatment throughout the next two years. The additional diagnostic studies she underwent included the following: (1) Dexa scan of the lumbar spine and AP of the spine on November 30, 1998; (2) MRI of the lumbar spine on January 5, 1999; (3) bone density analysis on April 14, 1999; (4) MRI of the lumbar spine on November 24, 1999; (5) myelogram and CT scan of the lumbar spine on December 7, 1999; (6) Dexa scan of the lumbar spine and left femoral neck on December 15, 1999; and (7) electromyelogram on December 14, 2000. Bartel saw Mrs. Gilbert in his office on December 10, 1998, March 8, 1999, June 1, 1999, and December 5, 2000. Based upon these additional studies and office visits, Bartel treated Mrs. Gilbert for lower back pain due to osteoporosis and a compression fracture. Bartel suggested that Mrs. Gilbert see a neurosurgeon for surgery. She saw the neurosurgeon but refused surgery, requesting less invasive treatment.

Early on in the two-year treatment, Bartel began to suspect that Mrs. Gilbert's back was broken due to osteoporosis and manipulations received from her chiropractor. Based on Bartel's diagnosis that Mrs. Gilbert's chiropractor was at least partially responsible for her broken back, the Gilberts sued the chiropractor using Bartel as an expert.

On January 22, 2001, Mrs. Gilbert was hospitalized for right shoulder and left hip pain. After reviewing the shoulder and hip x-rays, Bartel suggested that Gilbert see an oncologist. On January 26, 2001, the oncologist diagnosed Gilbert with bone marrow cancer.

On February 28, 2001, represented by counsel, the Gilberts filed suit against Bartel, the hospital, and other physicians for failing to diagnose her with cancer prior to her second hospitalization on January 21, 2001. More specifically, the Gilberts complained that, based upon a review of the records of the first hospitalization by the oncologist who made the diagnosis, the myelogram studies and lab work performed in 1998 "showed multiple myeloma in the early stages that should have been diagnosed and treated." On December 5, 2001, the Gilberts voluntarily nonsuited all their claims against all defendants.

On January 15, 2003, thirteen months later, the Gilberts filed this pro se suit against Bartel that is almost identical to the suit filed in February 2001. Bartel then filed a motion for summary judgment on the ground that the statute of limitations had run on the Gilberts' claims. The trial court granted summary judgment on all the Gilberts' claims.

The Gilberts now file this pro se appeal raising nineteen issues. We construe the Gilberts' issues as alleging basically that (1) the trial court erred by granting summary judgment on the health care liability claims based on the limitations ground because Bartel's failure to diagnose Mrs. Gilbert's cancer while treating her for an osteoporotic fracture of her spine constituted a continuing course of treatment for purposes of determining when the statute of limitations began to run; (2) it was impossible or exceedingly difficult for the Gilberts to discover the nature of Mrs. Gilbert's injury and bring suit before limitations barred their claims, and the Gilberts brought suit within a reasonable period of time after discovering the nature of Gilbert's injury; and (3) Bartel fraudulently concealed the nature of Gilbert's injury.

Additionally, the Gilberts argue that the trial court abused its discretion by sustaining Bartel's objections to all of their evidence presented in response to Bartel's motion for summary judgment.

## SUMMARY JUDGMENT STANDARD OF REVIEW

In a summary judgment case, the issue on appeal is whether the movant met his summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.[2] The burden of proof is on the movant, and all doubts about the existence of a genuine issue of material fact are resolved against the movant.[3] Therefore, we must view the evidence and its reasonable inferences in the light most favorable to the nonmovant.[4]

In deciding whether there is a material fact issue precluding summary judgment, all conflicts in the evidence are disregarded and the evidence favorable to the nonmovant is accepted as true.[5] Evidence that favors the movant's position will not be considered unless it is uncontroverted.[6] The summary judgment will be affirmed only if the record establishes that the movant has conclusively proved all essential elements of the movant's cause of action or affirmative defense as a matter of law.[7]

## LIMITATIONS FOR MEDICAL NEGLIGENCE CLAIMS

■ Article 4590i, section 10.01 establishes an absolute two-year statute of limitations for health care liability claims.[8] Section 4.01(a) of article 4590i requires any person asserting a health care liability claim to give written notice of the claim to each physician and health care provider at least sixty days before filing suit.[9] Notice given in accordance with section 4.01(a) tolls the applicable statute of limitations for seventy-five days, effectively creating a two-year-and-seventy-five-day statute of limitations.[10] The limitations period for medical negligence claims is measured from one of three dates: (1) the occurrence of the breach or tort; (2) the last date of the relevant course of treatment; or (3) the last date of the relevant hospitalization.[11] The Texas Supreme Court has

---

2. TEX.R. CIV. P. 166a(c); *S.W. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex.2002); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979).

3. *S.W. Elec. Power Co.*, 73 S.W.3d at 215; *Rhone–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex.1999); *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex.1965).

4. *Great Am.*, 391 S.W.2d at 47.

5. *Rhone–Poulenc*, 997 S.W.2d at 223; *Harwell v. State Farm Mut. Auto. Ins. Co.*, 896 S.W.2d 170, 173 (Tex.1995).

6. *Great Am.*, 391 S.W.2d at 47.

7. *Clear Creek Basin*, 589 S.W.2d at 678; *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex.1999); *Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 121 (Tex.1996).

8. Act of May 30, 1977, 65th Leg., R.S., ch. 817, 1977 Tex. Gen. Laws 2039, 2052 (repealed 2003).

9. Act of May 30, 1977, 65th Leg., R.S., ch. 817, 1977 Tex. Gen. Laws 2039, 2048 (former TEX.REV.CIV. STAT. art. 4590i, § 4.01), *repealed by* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 884 (current version at TEX. CIV. PRAC. & REM.CODE ANN. § 74.051 (Vernon 2004)).

10. Act of May 30, 1977, 65th Leg., R.S., ch. 817, 1977 Tex. Gen. Laws 2039, 2048 (repealed 2003); *De Romo v. St. Mary Hosp. Found.*, 843 S.W.2d 72, 75 (Tex.App.-Amarillo 1992, writ denied).

11. Act of May 30, 1977, 65th Leg., R.S., ch. 817, 1977 Tex. Gen. Laws 2039 (repealed 2003); *Shah v. Moss*, 67 S.W.3d 836, 841 (Tex.2001).

repeatedly held that a plaintiff may not choose the most favorable date that falls within section 10.01's three categories.[12] Rather, if the date the alleged tort occurred is ascertainable, limitations must begin on that date.[13] Thus, if the date is ascertainable, further inquiry into the second and third categories is unnecessary.[14]

■ There may be instances when the exact date the alleged tort occurred cannot be ascertained.[15] In that situation, the statute resolves doubts about the time of accrual in the plaintiff's favor by using the last date of treatment or hospitalization as a proxy for the actual date of the tort.[16] Before the last date of treatment becomes relevant to determining when limitations begins, however, the plaintiff must establish a course of treatment for the alleged injury.[17] Furthermore, if the defendant committed the alleged tort on an ascertainable date, whether the plaintiff established a course of treatment is immaterial because limitations begins to run on the ascertainable date.[18]

The primary issue of disagreement between the parties, and the issue we must first resolve, is the date the limitations period began. In this case, the Gilberts argue that the specific date of the alleged tort cannot be ascertained and that the alleged tort occurred during a continuing course of treatment, which started on October 28, 1998—when Bartel first examined Mrs. Gilbert in the hospital—and continued until January 25, 2001—when Bartel examined Mrs. Gilbert for the last time during her second hospitalization. The Gilberts therefore assert that the limitations period did not begin until the last date of treatment, January 25, 2001, and that this suit is not barred by the statute of limitations. Conversely, Bartel contends that the date of the alleged negligence is readily ascertainable and that the limitations period began on October 30, 1998, the most recent date of the only tests that marginally suggested cancer.

## Negligent Diagnosis Claim

■ The Gilberts' petition essentially alleges two claims: negligence and gross negligence for the failure to properly diagnosis and treat Mrs. Gilbert for cancer. The Gilberts allege that Bartel should have known Mrs. Gilbert had cancer after reviewing multiple tests conducted while she was hospitalized the first time and before releasing her from the hospital on November 13, 1998.

The Gilberts contend that Bartel was negligent in not taking actions that would have led to earlier discovery of Mrs. Gilbert's cancer. Bartel could have possibly been negligent by failing to conduct proper screening, to recognize symptoms of cancer, or to refer Mrs. Gilbert to a specialist only on those occasions when he saw her or when he ordered diagnostic tests:[19]

October 28–November 13, 1998 hospitalization;

12. *Shah,* 67 S.W.3d at 841; *Earle v. Ratliff,* 998 S.W.2d 882, 886 (Tex.1999); *Husain v. Khatib,* 964 S.W.2d 918, 919 (Tex.1998); *Bala v. Maxwell,* 909 S.W.2d 889, 891 (Tex.1995).

13. *Shah,* 67 S.W.3d at 841; *Rogers v. United Reg'l Health Care Sys.,* 109 S.W.3d 47, 50 (Tex.App.-Fort Worth 2003, no pet.); *Karley v. Bell,* 24 S.W.3d 516, 520 (Tex.App.-Fort Worth 2000, pet. denied).

14. *Shah,* 67 S.W.3d at 841.

15. *Id.*

16. *Rogers,* 109 S.W.3d at 51.

17. *Shah,* 67 S.W.3d at 841.

18. *Id.*

19. *See Bala,* 909 S.W.2d at 892; *Rowntree v. Hunsucker,* 833 S.W.2d 103, 108 (Tex.1992).

November 30, 1998 Dexa scan of the lumbar spine and AP of the spine;

December 10, 1998 office visit;

January 5, 1999 MRI of the lumbar spine;

March 8, 1999 office visit;

April 14, 1999 bone density analysis;

June 1, 1999 office visit;

November 24, 1999 MRI of the lumbar spine;

December 7, 1999 myelogram and CT scan of the lumbar spine;

December 15, 1999 Dexa scan of the lumbar spine and left femoral neck;

December 5, 2000 office visit;

December 14, 2000 electromyelogram; and

January 21–25, 2001 hospitalization.

We conclude that the dates of Bartel's alleged negligence are readily ascertainable and that it is therefore immaterial whether Bartel established a course of treatment for Mrs. Gilbert's back pain.[20]

Although we would normally look at each ascertainable date to determine whether the limitations period could have begun on any of those dates, the Gilberts failed to affirmatively argue that the limitations period began on any dates other than November 13, 1998 and January 25, 2001.[21] Rather, the Gilberts argued in the trial court only that these dates establish Bartel's course of treatment for Mrs. Gilbert and that the limitations period, therefore, should be measured from the last date of that treatment, January 25, 2001. Therefore, we must only examine the No-

vember 13, 1998 and January 25, 2001 dates.[22]

Viewing the evidence in the light most favorable to the Gilberts, there is an issue of fact about whether Bartel committed the alleged tort on November 13, 1998, by failing to recognize the possibility of cancer from tests done during Mrs. Gilbert's first hospitalization and releasing her from the hospital. Thus, November 13, 1998 is a tort date for which the limitations period may be measured.

On the second date, January 25, 2001, Bartel referred Mrs. Gilbert to an oncologist for testing that detected Mrs. Gilbert's cancer. Thus, the limitations period is not measured from January 25, 2001 because that date is not the date of the alleged tort.[23] On January 25, 2001, Bartel did exactly what Appellants contend he should have done previously—he examined Mrs. Gilbert and referred her to an oncologist for additional examinations, which led to the discovery of her cancer. Because Bartel did not commit the alleged tort on January 2001, the limitations period could not have begun on that date.[24]

In this case, the date of Bartel's alleged negligence is readily ascertainable. It is therefore immaterial whether Bartel established a course of treatment for Mrs. Gilbert's back injury.[25] Thus, because the alleged tort date, November 13, 1998, is ascertainable and the Gilberts did not file suit within two years of that date, article 4590i, section 10.01 bars the Gilberts' negligent diagnosis claim. Furthermore, although Bartel concedes that the Gilberts sent notice of their claim, they may not use

20. See Husain, 964 S.W.2d at 919.

21. See Karley, 24 S.W.3d at 520.

22. See id. at 521.

23. See id.

24. See Husain, 964 S.W.2d at 920; Bala, 909 S.W.2d at 892; Voegtlin v. Perryman, 977 S.W.2d 806, 811 (Tex.App.-Fort Worth 1998, no pet.).

25. See Shah, 67 S.W.3d at 841.

the seventy-five day tolling provision in section 4.01(c) because they filed suit after the statute of limitations had already expired.[26] Consequently, the trial court did not err by granting Bartel's motion for summary judgment on the negligent diagnosis claim.

### NEGLIGENT TREATMENT CLAIM

The Gilberts allege that the summary judgment evidence demonstrated a course of treatment that Bartel administered for Mrs. Gilbert's back problems. They further allege that, because there was some evidence that the January 2001 hospitalization examination for hip and shoulder pain related to the continuing relationship between Bartel and Mrs. Gilbert to treat Mrs. Gilbert's back pain, there was a fact issue about when the course of treatment for her back pain ended. We disagree.

Because, as we hold above, the date the alleged tort or breach took place is ascertainable, a course of treatment analysis is immaterial to determining when limitations began to run.[27] It is also unimportant to our inquiry whether the tort is characterized as a failure to diagnose cancer or as an improper course of treatment based on a misdiagnosis.[28] The Gilberts' complaint is that Bartel was negligent in not taking actions—testing, referrals to specialists, proper examinations—that would have led to earlier discovery of Mrs. Gilbert's cancer. Those events, or nonevents, occurred on specific ascertainable dates.[29] The Texas Supreme Court has

held that when a physician fails to diagnose a condition, the continuing nature of the diagnosis does not extend the tort for limitations purposes.[30] " 'While the failure to treat a condition may well be negligent, we cannot accept the self-contradictory proposition that the failure to establish a course of treatment is a course of treatment.' " [31] Furthermore, neither the mere continuing relation between physician and patient nor the continuing nature of a diagnosis is sufficient to create a course of treatment.[32]

In this case, Bartel treated Mrs. Gilbert for osteoporosis and a compression fracture. The Gilberts agree that Bartel's diagnosis of Mrs. Gilbert's compression fracture was correct and that he continued to treat her for a osteoporosic compression fracture. Thus, they do not allege that Bartel's course of treatment was not proper for osteoporosis and a compression fracture. Rather they allege that the treatment was not proper for cancer, which they allege he negligently failed to diagnose. Consequently, because as set forth above, the dates of Bartel's alleged negligence are ascertainable, and thus a course of treatment analysis is immaterial, we hold that the trial court did not err by granting Bartel's motion for summary judgment on the Gilberts' negligent treatment claim when the only measurable limitations date argued by the Gillberts is November 13, 1998, which fell more than two years before the date of suit.

---

26. *Rogers,* 109 S.W.3d at 51.

27. *See Shah,* 67 S.W.3d at 841.

28. *Husain,* 964 S.W.2d at 920.

29. *See id.*

30. *Bala,* 909 S.W.2d at 892; *Rowntree,* 833 S.W.2d at 108.

31. *Bala,* 909 S.W.2d at 892; *Rowntree,* 833 S.W.2d at 105–06; *see also Husain,* 964 S.W.2d at 919; *Kimball v. Brothers,* 741 S.W.2d 370, 372 (Tex.1987); *Chambers v. Conaway,* 883 S.W.2d 156, 158 (Tex.1993).

32. *Rowntree,* 833 S.W.2d at 105.

### FRAUDULENT CONCEALMENT

 Fraudulent concealment in medical negligence cases estops a health-care provider from relying on limitations to bar a plaintiff's claim.[33] The plaintiff must show the health-care provider actually knew a wrong occurred, had a fixed purpose to conceal the wrong, and did conceal the wrong from the patient.[34] Fraudulent concealment tolls limitations until the plaintiff discovers the fraud or could have discovered the fraud with reasonable diligence.[35]

 The Texas Supreme Court has held that article 4590i, section 10.01 "does not abolish fraudulent concealment as an equitable estoppel to the affirmative defense of limitations."[36] A plaintiff who asserts fraudulent concealment to avoid summary judgment on limitations grounds must raise a fact issue that would support this assertion.[37]

In this case, the Gilberts argue that limitations does not bar their claims because Bartel fraudulently concealed the negligent nature of his misdiagnosis from the October 1998 tests. The Gilberts claim that when Bartel suspected the cancer in January 2001, Bartel actually knew he committed malpractice in failing to diagnose the cancer earlier. The Gilberts contend that Bartel's explanations about Mrs. Gilbert's failure to improve from the compression fracture followed by the diagnosis of cancer when Mrs. Gilbert was hospitalized for shoulder and hip pain were designed to conceal this negligence. Furthermore, the Gilberts argue that Bartel's summary judgment motion did not consider the fraudulent concealment allegations, and therefore, the trial court's judgment should be reversed and remanded. We disagree.

The Gilberts' contention that Bartel's summary judgment motion did not consider the fraudulent concealment claim is without merit. To avoid summary judgment on limitations grounds, the Gilberts must have raised a fact issue to support their fraudulent concealment assertion.[38] The Gilberts had to raise a fact issue showing Bartel knew the Gilberts had been wronged and concealed that fact to deceive them.[39]

In this case, although the Gilberts allege that the trial court erred by sustaining Bartel's objections to their evidence, our review of the record shows that the Gilberts failed to offer any admissible evidence.[40] Accordingly, the Gilberts did not raise a fact issue demonstrating that Bartel knew about the alleged negligence and that he concealed this wrong to deceive them. Because the Gilberts did not raise a fact issue to support their fraudulent concealment claim, the limitations period was not tolled and limitations bars their

---

33. *Id.*

34. *Id.*

35. *Id.; Velsicol Chem. Corp. v. Winograd,* 956 S.W.2d 529, 531 (Tex.1997).

36. *Shah,* 67 S.W.3d at 841; *Borderlon v. Peck,* 661 S.W.2d 907, 909 (Tex.1983).

37. *Shah,* 67 S.W.3d at 841.

38. *See id.* at 846.

39. *See id.*

40. TEX.R. CIV. P. 166a(f); *United Blood Servs. v. Longoria,* 938 S.W.2d 29, 30 (Tex.1997); *Town N. Nat'l Bank v. Broaddus,* 569 S.W.2d 489, 494 (Tex.1978); *Abe's Colony Club, Inc. v. C & W Underwriters, Inc.,* 852 S.W.2d 86, 88 (Tex.App.-Fort Worth 1993, writ denied). *See generally* Hon. David Hittner & Lynne Liberato, *Summary Judgments in Texas,* 34 HOUS. L.REV. 1303, 1337–44 (1998), for a discussion of proper affidavits in the summary judgment context.

claims.[41]

## The Texas Constitution's Open Courts Provision

 The Texas Constitution guarantees that persons bringing common-law claims will not unreasonably or arbitrarily be denied access to the courts.[42] A statute that unreasonably or arbitrarily abridges a person's right to obtain redress for injuries that another person's harmful act causes is an unconstitutional due course of law violation.[43] Consequently, our constitution's open courts provision protects a person from legislative acts that cut off a person's right to sue before there is a reasonable opportunity to discover the wrong and bring suit.[44] The legislature cannot abrogate the right to bring a well-established common-law claim without showing that the statute's objectives and purposes outweigh denying the constitutionally guaranteed right of redress.[45]

 To establish an open courts violation in an article 4590i case, a litigant must first show a cognizable, common-law claim that article 4590i's limitations provision restricts.[46] The litigant must then show that the restriction is unreasonable or arbitrary when balanced against the statute's purpose and basis.[47] The limitations provision in article 4590i, section 10.01 does not violate the open courts guarantee if the plaintiff had a reasonable

opportunity to discover the alleged wrong and bring suit before the limitations period expired.[48]

 The Gilberts argue that our constitution's open courts provision precludes article 4590i, section 10.01 from barring their negligence claims.[49] The Gilberts allege that they did not learn about the cancer until two years after Mrs. Gilbert's first hospitalization when Bartel began treating her for osteoporosis and the compression fracture. They filed suit against Bartel just over a month after learning of the cancer but then nonsuited the case. They then waited an additional thirteen months before filing this suit. The Gilberts contend, however, that the two-year limitations period should not bar their claims because they did not know there was a causal connection between Bartel's misdiagnosis and Mrs. Gilbert's cancer until after the hospitalization in January 2001.

In this case, the Gilberts' negligence claims against Bartel are examples of well-established medical malpractice common-law claims.[50] The Texas Supreme Court has held that article 4590i, section 10.01 bars these claims.[51] Therefore, it was the Gilberts' burden to raise a fact issue demonstrating that they did not have a reasonable opportunity to discover the alleged wrong before the limitations period ex-

---

41. *See Shah*, 67 S.W.3d at 846.

42. Tex. Const. art. 1, § 13 ("All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law."); *Shah*, 67 S.W.3d at 841; *Jennings v. Burgess*, 917 S.W.2d 790, 793 (Tex.1996).

43. *Shah*, 67 S.W.3d at 842; *Earle*, 998 S.W.2d at 889; *Jennings*, 917 S.W.2d at 793.

44. *Shah*, 67 S.W.3d at 842.

45. *Id.*; *Weiner v. Wasson*, 900 S.W.2d 316, 318 (Tex.1995); *Sax v. Votteler*, 648 S.W.2d 661, 665–66 (Tex.1983).

46. *Shah*, 67 S.W.3d at 842.

47. *Id.*

48. *Id.*

49. *See* Tex. Const. art. I, § 13.

50. *See Shah*, 67 S.W.3d at 846.

51. *Id.*

pired to trigger the open courts guarantee.[52] Because the Gilberts failed to present any admissible evidence to support their claims, they have not met their burden to raise an issue of fact on this point.

 Additionally, even if we take as true the Gilberts' assertion that they could not have sued within the two-year limitations period because they did not discover Bartel's negligence until Mrs. Gilbert's last hospital visit in January 2001, the open courts provision does not save the Gilberts' claims. A plaintiff may not obtain relief under the open courts provision if he does not use due diligence and sue within a reasonable time after learning about the alleged wrong.[53]

Here, the summary judgment evidence shows that the Gilberts knew about the alleged injury, Mrs. Gilbert's cancer, when they first brought suit against Bartel at least thirteen months before bringing this suit. The Gilberts offer no justifiable or excusable explanation for their delay in bringing this second suit. Therefore, the Gilberts did not raise a fact issue establishing that they did not have a reasonable opportunity to discover the alleged wrong and bring suit within the limitations period or that they sued within a reasonable time after discovering the alleged wrong.[54] Thus, the open courts provision does not apply to save the Gilberts' time-barred negligence claims.[55] Accordingly, the trial court did not err by holding that limitations barred the Gilberts' claims.

## CONCLUSION

Having held that article 4590i, section 10.01 bars the Gilberts' negligent and gross negligent diagnosis and treatment claims, and that the Gilberts did not raise a fact issue to support their fraudulent concealment allegation or their contention that our open courts provision saves their negligence claims, we overrule each of the Gilberts' nineteen issues. We affirm the trial court's judgment.

---

**52.** *See id.* at 846–47.

**53.** *Id.* at 847; *Voegtlin,* 977 S.W.2d at 812; *Fiore v. HCA Health Servs. of Tex., Inc.,* 915 S.W.2d 233, 237 (Tex.App.-Fort Worth 1996, writ denied).

**54.** *See Shah,* 67 S.W.3d at 847.

**55.** *See id.* at 847; *see also Fiore,* 915 S.W.2d at 237; *Hall v. Dow Corning Corp.,* 114 F.3d 73, 77 (5th Cir.1997) (applying Texas law to hold that a fifteen-month delay was excessive as a matter of law).