

# NUMBER 13-05-00064-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**DONALD STREICH,**                                                          **Appellant,**

**v.**

**JOSEPH DOUGHERTY, M.D.,**                                         **Appellee.**

---

**On Appeal from the 197th District Court of Cameron County, Texas.**

---

# MEMORANDUM OPINION ON REHEARING

**Before Chief Justice Valdez and Justices Rodriguez and Benavides[1]**
**Memorandum Opinion on Rehearing by Chief Justice Valdez**

Appellee, Joseph Dougherty, M.D., has filed a motion for rehearing en banc. We construe this motion as requesting both further rehearing and en banc reconsideration. *See* TEX. R. APP. P. 49.7 (en banc reconsideration); *Brookshire Bros., Inc. v. Smith*, 176 S.W.3d 30, 39 (Tex. App.–Houston [1st Dist.] 2005, pet. denied) (op. on reh'g), *cert.*

---

[1]The Honorable Errlinda Castillo, who was originally assigned to this panel but whose term of office expired on December 31, 2006, did not participate in this opinion. She was replaced on panel by Justice Gina Benavides pursuant to the appellate rules. *See* TEX. R. APP. P. 41.1(a).

*denied*, *Smith v. Brookshire Bros., Inc.*, 127 S. Ct. 256, 166 L. Ed. 2d 150, 2006 U.S. LEXIS 7210, *1 (Oct. 2, 2006). After due consideration of appellee's arguments, we grant appellee's motion for rehearing and dismiss as moot appellee's motion for rehearing en banc. We withdraw our previous memorandum opinion and judgment, and issue the following memorandum opinion and judgment in their stead.

Appellant, Donald Streich, appeals from the trial court's order granting summary judgment in favor of appellee, Joseph Dougherty, M.D., on a medical malpractice suit.[2] In the sole issue presented, appellant claims the trial court erred in granting summary judgment. We affirm the judgment.

## I. Background

Appellant was diagnosed with congestive heart failure and end-stage renal disease. Appellant was admitted to Valley Baptist Medical Center and, on November 3, 1999, Dr. Ruben Lopez inserted a Schon catheter into appellant's internal jugular vein for the purposes of beginning dialysis. Appellant began dialysis under the care of Dr. Dougherty, a nephrologist. Appellant was discharged from Valley Baptist on November 5, 1999.

On November 6, 1999, appellant was again admitted to Valley Baptist complaining of fever and chills. On November 8, 1999, a lab report showed that a blood culture taken from the catheter site and drainage of the dialysis catheter was positive for staphylococcus aureus. On November 12, 1999, Lopez removed the Schon catheter and inserted a left Quinton catheter. On November 14, 1999, appellant told Dr. Dougherty that he was experiencing low back pain. On November 16, 1999, Dr. Dougherty discharged appellant

---

[2] Other aspects of this case have previously been addressed by this Court in *Streich v. Pallares*, No. 13-02-698-CV, 2005 Tex. App. LEXIS 5224 (Tex. App.–Corpus Christi 2005, no pet.), and *Streich v. Lopez*, No. 13-02-074-CV, 2004 Tex. App. LEXIS 7703 (Tex. App.–Corpus Christi Aug. 26, 2004, no pet.).

2

with orders to continue outpatient dialysis. Appellant continued to experience back pain.

On November 29, 1999, Dr. Jerry Palleres performed a CT scan of appellant's lumbar spine and concluded that appellant had an atypical compression fracture. On January 8, 2000, Dr. Dougherty told appellant that he had a hairline crack in one of the vertebrae of his tail bone and that his pain would improve gradually. Appellant continued to experience back pain, and on February 5, 2000, Dr. Dougherty referred him to a pain center and requested that nerve conduction studies be performed.

Appellant's back pain continued, and he developed pain in his hips and discomfort and numbness in his legs. Appellant further developed weakness of the lower extremities such that he could not walk. Appellant continued to keep his physicians informed regarding his symptomology.

Dr. Dougherty saw appellant on February 27, 2000, and admitted him to Valley Baptist the following day for observation. Dr. Dougherty referred appellant to Dr. Gale Downey, a neurologist, for a consultation regarding appellant's leg pain. On February 29, 2000, Downey performed an MRI of appellant's lower spine. The MRI revealed an epidural mass. On March 1, 2000, Dr. Dougherty referred appellant to Dr. Brent Clyde, a neurosurgeon, who found a lytic lesion at the L4 vertebrae. Clyde recommended surgery.

On March 2, 2000, Dr. Eric Six, a neurosurgeon, performed surgery on the lesion and discovered a large volume of pus, which had developed over time, primarily at the L3 and L4 vertebrae. Cultures taken on March 2, 2000 showed the presence of staphylococcus aureus. Appellant was later informed that this infection was the result of

3

the earlier surgery to insert his catheter.[3]

On February 27, 2002, appellant sent an article 4590(i) notice letter to Dr. Dougherty and other medical providers informing them that a health care liability claim was under consideration. According to the notice, the claim against Dr. Dougherty and others was a result of negligence in the operative and post-operative care provided to appellant for a surgery performed on November 3, 1999, resulting in infection and an epidural abscess. Appellant subsequently filed suit on April 9, 2002.

## II.  Motion for Summary Judgment

Dr. Dougherty's motion for summary judgment was premised both on traditional and no evidence grounds. In his traditional motion, Dr. Dougherty moved for full or partial summary judgment on grounds that the statute of limitations barred all of appellant's causes of action or, in the alternative, barred any alleged negligence that occurred prior to February 27, 2000. In his no evidence motion for summary judgment, Dr. Dougherty argued that appellant had no evidence of duty, breach of duty, or proximate causation.

The trial court's order granting summary judgment does not specify the basis for its ruling. Because Dr. Dougherty moved for summary judgment on both traditional and no evidence grounds and the trial court did not specify which it granted, we can uphold the summary judgment on either ground. *See Bruce v. K.K.B., Inc.*, 52 S.W.3d 250, 254 (Tex. App.–Corpus Christi 2001, pet. denied); *see also FNFS, Ltd. v. Sec. State Bank & Trust*, 63 S.W.3d 546, 548 (Tex. App.–Austin 2001, pet. denied).

When a party moves for summary judgment under both rules 166a(c) and 166a(i)

---

[3] Appellant's claims against Dr. Dougherty do not involve allegations regarding the surgery or the causation of the infection. Instead, appellant's claims against Dr. Dougherty involve his post-surgical course of treatment.

4

of the Texas Rules of Civil Procedure, we will first review the trial court's judgment under the standards of rule 166a(i).  *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004); *see* TEX. R. CIV. P. 166a(c), (I).  If the appellant fails to produce more than a scintilla of evidence under that burden, then there is no need to analyze whether appellee's summary judgment proof satisfies the less stringent rule 166a(c) burden.  *Id.*

### III.  No Evidence Motion for Summary Judgment

A no evidence motion for summary judgment is essentially a pretrial motion for directed verdict, and the appellate court will apply the same standard of review.  *Zapata v. Children's Clinic*, 997 S.W.2d 745, 747 (Tex. App.–Corpus Christi 1999, pet. denied); *Moore v. K Mart Corp.*, 981 S.W.2d 266, 269 (Tex. App.–San Antonio 1998, pet. denied). We "examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion."  *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005); *see Whalen v. Condo Consulting & Mgmt. Servs., Inc.*, 13 S.W.3d 444, 446 (Tex. App.–Corpus Christi 2000, pet. denied).  The nonmovant need not "marshal its proof," rather, it "need only point out evidence that raises a fact issue on the challenged elements."  TEX. R. CIV. P. 166a(i) cmt.  When a motion for summary judgment is based on no evidence grounds, the Texas Supreme Court has ordered that:

1.    the no-evidence motion can only be brought against "a claim or defense on which an adverse party would have the burden of proof at trial;"

2.    "the motion must state the elements as to which there is no evidence;"

3.    "the motion must be specific in challenging the evidentiary support for an element of a claim;" and

5

4.   "paragraph (i) does not authorize conclusory motions or general no-evidence challenges to an opponent's case."

TEX. R. CIV. P. 166a(i), 166a(i) cmt.; *see Oasis Oil Corp. v. Koch Ref. Co.*, 60 S.W.3d 248, 250 (Tex. App.–Corpus Christi 2001, pet. denied).

"The trial court may not grant a no-evidence summary judgment if the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact." *Oasis Oil Corp.*, 60 S.W.3d at 250; *Zapata*, 997 S.W.2d at 747. Evidence that is "so weak as to do no more than create a mere surmise or suspicion" of a fact is legally insufficient and constitutes no evidence. *Moore*, 981 S.W.2d at 269 (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)). More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow Pharm., Inc v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997); *Zapata*, 997 S.W.2d at 747.

In his no evidence motion for summary judgment, Dr. Dougherty alleged that appellant had no evidence of duty, breach of duty, and proximate causation as required in a medical negligence cause of action. According to the no evidence motion, the deadline for appellant's designation of experts had passed and appellant had failed to designate experts to testify that Dr. Dougherty's care and treatment of appellant after February 27, 2000 deviated from the standard of care. In response to the motion for summary judgment, appellant produced the deposition testimony of his expert witness, Dr. Allen I. Arieff.

On appeal, Dr. Dougherty contends that appellant did not offer even a scintilla of evidence that Dr. Dougherty was negligent in his treatment of appellant after February 27, 2000. According to Dr. Dougherty, appellant focuses only on the care rendered by Dr.

6

Dougherty between November 3, 1999, and February 24, 2000, all of which was barred by the applicable statute of limitations.

The elements that must be proven for a medical malpractice action are: (1) a physician's duty to act according to a certain standard; (2) a breach of the applicable standard of care; (3) an injury; and (4) a causal connection between the breach of care and the injury. *Krishnan v. Ramirez*, 42 S.W.3d 205, 212 (Tex. App.–Corpus Christi 2001, pet. denied); *Smith v. Mossbacker*, 94 S.W.3d 292, 294 (Tex. App.–Corpus Christi 2002, no pet.); *Schorlemer v. Reyes*, 974 S.W.2d 141, 147 (Tex. App.–San Antonio 1998, pet. denied).

Duty in a medical malpractice case is triggered by the existence of a physician-patient relationship. *St. John v. Pope*, 901 S.W.2d 420, 423 (Tex. 1995). A physician-patient relationship comes into being only upon a physician's express or implied consent. *See id.* Where no prior relationship exists, the doctor must take some affirmative step to treat the patient before a relationship can be established. *See Ortiz v. Shah*, 905 S.W.2d 609, 611 (Tex. App.–Houston [14th Dist.] 1995, writ denied); *Lopez v. Aziz*, 852 S.W.2d 303, 306 (Tex. App.–San Antonio 1993, no writ). "The duty to treat the patient with proper professional skill flows from the consensual relationship between the patient and physician, and only when that relationship exists can there be a breach of a duty resulting in medical malpractice." *St. John*, 901 S.W.2d at 423; *see Ramirez v. Carreras*, 10 S.W.3d 757, 761 (Tex. App.–Corpus Christi 2000, pet. denied). Once such a relationship exists, however, the physician then owes the patient a duty to treat him or her with the skills of a trained, competent professional, and a breach of that duty may give rise to a malpractice action. *Reynosa v. Huff*, 21 S.W.3d 510, 513 (Tex. App.–San Antonio 2000, no pet.).

7

The threshold question in a medical malpractice case is the standard of care. *Jones v. Miller*, 966 S.W.2d 851, 854 (Tex. App.–Houston [1st Dist.] 1998, no pet.). The applicable standard must be established so the fact finder can decide if the defendant deviated from it. *Id*. To raise a fact issue sufficient to defeat summary judgment, the plaintiff's controverting expert should specifically identify the standard of care, establish the expert's familiarity with that standard, and explain why the treatment rendered by the defendant health-care provider breached the applicable standard. *Hightower v. Saxton*, 54 S.W.3d 380, 389 (Tex. App.–Waco 2001, no pet.); *Keeton v. Carrasco*, 53 S.W.3d 13, 25 (Tex. App.–San Antonio 2001, pet. denied).

In order to be a proximate cause, the negligence must have been a substantial factor in bringing about the harm and without which, the harm would not have occurred. *Columbia Med. Ctr. of Las Colinas v. Bush ex rel. Bush*, 122 S.W.3d 835, 852 (Tex. App.–Fort Worth 2003, pet. denied); *Sisters of St. Joseph of Tex., Inc. v. Cheek*, 61 S.W.3d 32, 35 (Tex. App.–Amarillo 2001, pet. denied). To establish proximate cause, a plaintiff must prove both cause-in-fact and foreseeability. *Duff v. Yelin*, 751 S.W.2d 175, 176 (Tex. 1988). Cause-in-fact requires a causal connection between the injuries suffered and the negligence of appellants based upon "reasonable medical probability," not mere conjecture, speculation, or possibility. *See Park Place Hosp. v. Estate of Milo*, 909 S.W.2d 508, 511 (Tex. 1995). For an injury to be foreseeable, "a person of ordinary intelligence should have anticipated the danger created by a negligent act or omission." *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex. 1995).

In the instant case, the medical records and deposition testimony clearly indicate that Dr. Dougherty and appellant had a physician-patient relationship and that Dr.

Dougherty provided appellant a course of treatment from November of 1999 through August of 2000. Accordingly, Dr. Dougherty owed appellant a duty to treat him with the skills of a trained, competent professional. *Reynosa*, 21 S.W.3d at 513.

Dr. Arieff testified regarding the applicable standard of care. His testimony established his familiarity with that standard, and he explained why the treatment rendered by Dr. Dougherty breached the applicable standard. *Hightower*, 54 S.W.3d at 389; *Keeton*, 53 S.W.3d at 25. In short, Arieff testified that Dr. Dougherty did not provide adequate post-surgical treatment of appellant's condition and that an adequate post-surgical course of treatment would have remedied appellant's infection associated with the insertion of his catheter. Dr. Arieff specifically detailed the symptomology that appellant suffered and the protocols that could have identified the infection. He offered evidence that a reasonably careful nephrologist would have investigated appellant's progressive neurological disability by ordering neuroimaging studies, requesting a gallium scan or an indium scan, or consulting a neurosurgeon or neurologist. Dr. Arieff further testified that Dr. Dougherty's failure to properly treat and diagnose the infection resulted in appellant's multiple surgeries and disability.

We conclude that appellant produced evidence raising a fact issue on the elements of duty, breach of duty, and proximate cause. *See* TEX. R. CIV. P. 166a(i). Accordingly, the trial court could not properly have granted the no evidence motion for summary judgment on these grounds.

On appeal, Dr. Dougherty contends that the record contains no evidence that he was negligent in his care subsequent to February 27, 2000, or that any such negligence proximately caused appellant's damages. To obtain no-evidence summary judgment on

9

a claim, appellee was required to "state the elements as to which there is no evidence." *See* Tᴇx. R. Cɪv. P. 166a(i) & cmt. In addition, the district court could not grant summary judgment on grounds not expressly raised in appellee's summary judgment motion. *See, e.g.*, *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 204 (Tex. 2002); *Chessher v. Southwestern Bell Tel. Co.*, 658 S.W.2d 563, 564 (Tex. 1983); *Trilogy Software, Inc. v. Callidus Software, Inc.*, 143 S.W.3d 452, 469 n.15 (Tex. App.–Austin 2004, pet. filed). Appellant would have had no obligation to present evidence regarding claims not specifically challenged. *See McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 342 (Tex. 1993).

Appellee's motion for summary judgment based on no evidence concerned the elements of duty, breach of that duty, and proximate causation. Appellee's claims regarding the statute of limitations were not raised in his no evidence motion for summary judgment, but were instead argued in his traditional motion for summary judgment. Accordingly, the trial court could not have properly granted the no evidence summary judgment on the basis of limitations. *See id.*

### III. Traditional Motion for Summary Judgment

We review the trial court's granting of a traditional motion for summary judgment de novo. *See Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex. 1994); *Alejandro v. Bell*, 84 S.W.3d 383, 390 (Tex. App.–Corpus Christi 2002, no pet.). To prevail on a summary judgment motion, a moving party must establish that no genuine issue of material fact exists and judgment should be granted as a matter of law. *Shah v. Moss*, 67 S.W.3d 836, 842 (Tex. 2001). In deciding whether there is a genuine issue of material fact, we resolve any doubt against the movant, and view the evidence in a light most favorable to the

nonmovant. *Id.*

A defendant moving for summary judgment on the affirmative defense of a tolled limitation statute has the burden of conclusively establishing that defense. *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999). A defendant must (1) conclusively prove when the action accrued, and (2) negate the discovery rule if it applies and has been pleaded or raised. *Id.* If the movant establishes that the statute of limitations bars the action, the nonmovant must then offer proof raising a fact issue to avoid summary judgment. *Id.*

In this case, Dr. Dougherty moved for full or partial summary judgment on all of appellant's causes of action or, in the alternative, for any alleged negligence that occurred prior to February 27, 2000. In his motion for summary judgment, appellee contends that appellant's causes of action are barred by limitations because the treatment complained of occurred between November 3, 1999, and February 27, 2000, more than two years before suit. According to appellee, all allegations of negligence which occurred prior to February 27, 2000, were barred by the statute of limitations. Dr. Dougherty further contends that appellant failed to present any summary judgment evidence that appellee was negligent after February 27, 2000, or that such post February 27, 2000, negligence proximately caused appellant's alleged damages.

Because this case was originally filed before September 1, 2003, former article 4590i, section 10.01 of the Texas Revised Civil Statutes governs this case. Act of May 30, 1977, 65th Leg., R.S., ch. 817, § 1.01-12.01, 1977 Tex. Gen. Laws 2039-2053 (as amended) (henceforth "Former TEX. REV. CIV. STAT. art. 4590i"), repealed by Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 884 (current version

11

at TEX. CIV. PRAC. & REM. CODE ANN. § 74.001 et seq. (Vernon Supp. 2006)). Former article 4590i, section 10.01, in pertinent part, provides:

> Notwithstanding any other law, no health care liability claim may be commenced unless the action is filed within two years from the occurrence of the breach or tort or from the date the medical or health care treatment that is the subject of the claim or the hospitalization for which the claim is made is completed . . . .

Former TEX. REV. CIV. STAT. art. 4590i, § 10.01.

The former statute created a two-year limitations period in which to bring suit on health care liability claims. *See id.*; *Kimball v. Brothers*, 741 S.W.2d 370, 372 (Tex. 1987). Under the statute, commencement of limitations begins on one of three dates: (1) the occurrence of the breach or tort; (2) the date the medical or health care treatment that is the subject of the claim is completed; or (3) the date the hospitalization for which the claim is made is completed. *See* Former TEX. REV. CIV. STAT. ANN. art. 4590i, § 10.01; *Shah v. Moss*, 67 S.W.3d 836, 841 (Tex. 2001); *Kimball v. Brothers*, 741 S.W.2d 370, 372 (1987).

A plaintiff may not simply choose the most favorable date that falls within this provision, rather, if the specific date of the alleged tort is ascertainable, the limitations period commences upon that date. *Shah*, 67 S.W.3d at 841; *Earle v. Ratliff*, 998 S.W.2d 882, 886 (Tex. 1999). In other words, if the date of the occurrence of the breach or tort is ascertainable, then an inquiry into the second and third categories is unnecessary. *Shah*, 67 S.W.3d at 841. If the date is not ascertainable, the plaintiff must establish a course of treatment for the alleged injury in which the last treatment date becomes relevant to determining when limitations begins. *Id.* In such a case, the commencement of the limitation period occurs on the last date appellee treated appellant and had a chance to perform his alleged duties. *See id.* at 843. However, if the date of the alleged tort is

12

ascertainable, limitations begin to run on that date whether or not the plaintiff established a course of treatment. *Id.* at 841. When a physician fails to diagnose a condition, the continuing nature of the diagnosis does not extend the tort for limitations purposes. *Rowntree v. Hunsucker*, 833 S.W.2d 103, 108 (Tex. 1992). While the failure to treat a condition may well be negligent, the failure to establish a course of treatment does not constitute a course of treatment. *Id.* at 105-06.

By virtue of section 4.01 of the former act, a person could extend the two-year limitations period for seventy-five days by giving notice of a claim under the Act. *See* Former TEX. REV. CIV. STAT. ANN. art. 4590i, § 4.01; *De Checa v. Diagnostic Ctr. Hospital, Inc.*, 852 S.W.2d 935, 937-38 (Tex. 1993) (notice given in accordance with section 4.01(a) tolls the applicable statute of limitations for seventy-five days, effectively creating a two-year-and-seventy-five-day statute of limitations); *Theroux v. Vick*, 163 S.W.3d 111, 114-15 (Tex. App.–San Antonio 2005, pet. denied). Generally, a suit may not be filed outside this extended limitations period. *De Checa*, 852 S.W.2d at 938. Moreover, notice under former section 4.01 could not toll a limitations period that had already elapsed. *Id*. at 938 n.4.

According to Dr. Dougherty's brief:

> Appellee firmly and conclusively established that, since Appellant's notice letter was sent on February 27, 2002 and no suit was filed prior to February 27, 2002, all alleged negligence occurring on or before February 27, 2000 is absolutely barred by the two year statute of limitations pursuant to § 10.01 of the Texas Medical Liability and Insurance Improvement Act.

Dr. Dougherty appears to be contending that the date appellant sent his notice letter has some impact on the accrual of appellant's cause of action. We do not agree. The notice letter does not establish the accrual date of the cause of action for limitations purposes;

13

rather, its purpose is to toll limitations once the cause of action has accrued. Likewise, suits based on the conclusion of a course of medical or health care treatment are based on the course of treatment and not the completion of treatment. As stated previously, limitations begin to run on: (1) the occurrence of the breach or tort; (2) the date the medical or health care treatment that is the subject of the claim is completed; or (3) the date the hospitalization for which the claim is made is completed. *See* Former TEX. REV. CIV. STAT. ANN. art. 4590i, § 10.01; *Shah*, 67 S.W.3d at 841.

According to the summary judgment evidence, appellant was examined by Dr. Dougherty over the course of multiple occasions spanning from November of 1999 until the infection was finally diagnosed on March 2, 2000. Appellant contends that appellee's alleged negligent failure to diagnose and treat the infection allegedly occurred over the span of those dates. According to appellant, while individual dates of examination and treatment are readily ascertainable, as they are in all course of treatment cases, the failure occurred over the whole course of treatment and no single date for the failure can be ascertained.

We must disagree. In this case, the dates of the alleged negligence are readily ascertainable. *Husain v. Khatib*, 964 S.W.2d 918, 919-20 (Tex. 1998). It is therefore immaterial whether appellant established a course of treatment or whether the tort is characterized as a failure to diagnose the infection or as an improper course of treatment based on a misdiagnosis of the infection as a compression fracture. *Id.*

Appellant's complaint is that appellee was negligent in not taking actions, such as conducting more tests, including an MRI of the spinal column or gallium or indium scans to localize the site of the abscess, obtaining a blood culture, and ordering bone scans, that

14

would have led to earlier discovery of the infection. Those events, or omissions, occurred on specific ascertainable dates when appellee saw appellant. That is, the alleged negligence could only have occurred on the dates that appellee treated appellant before he was properly diagnosed. *See Bala v. Maxwell*, 909 S.W.2d 889, 892 (Tex. 1995) (concluding that doctor could have breached the duty to perform additional tests only when he examined patient); *Rowntree*, 833 S.W.2d at 108 (holding that doctor could have breached duty to perform proper examinations only on those occasions when he had opportunity to perform such examinations); *Rogers v. United Reg'l Health Care Sys.*, 109 S.W.3d 47, 51 (Tex. App.–Fort Worth 2003, no pet.); *Karley v. Bell*, 24 S.W.3d 516, 520 (Tex. App.–Fort Worth 2000, pet. denied).

On February, 27, 2000, appellee saw appellant and admitted him to the hospital the following day for the examinations and testing that detected the infection. Appellee did exactly what appellant contends he should have done previously. Therefore, any negligence could only have occurred at the latest at the last examination prior to this date. *Husain*, 964 S.W.2d at 920; *see Bala*, 909 S.W.2d at 891-92; *Gilbert v. Bartel*, 144 S.W.3d 136, 142 (Tex. App.–Fort Worth 2004, pet. denied).

The record contains no allegations or evidence that the appellee was negligent in his treatment of appellant after he was properly diagnosed with the infection. Therefore, appellant is not entitled to use the last date of the relevant course of treatment as the beginning date for the statute of limitations. *See Bala*, 909 S.W.2d at 892; *Rowntree*, 833 S.W.2d at 108; *Karley*, 24 S.W.3d at 520-21.

Because the last date on which appellee could have been negligent was prior to February 27, 2000, and appellant did not file this action until April 9, 2002, the two-year

15

statute of limitations bars his claim. *See* TEX. REV. CIV. STAT. ANN. art. 4590i, § 10.01. Because appellant filed his claim after the statute of limitations had already expired, he is not entitled to use the tolling provision in section 4.01(c), which tolls the statute of limitations for seventy-five days if the plaintiff provides notice of the claim to the health care provider at least sixty days before filing suit. *See id.* § 4.01(a); *De Checa*, 852 S.W.2d at 938 n.4 (stating that notice cannot toll a limitations period that has already elapsed). Therefore, we conclude that summary judgment was properly granted on the issue of limitations. Appellant's sole issue is overruled.

V. Conclusion

We affirm the judgment of the trial court.

_____
ROGELIO VALDEZ,
Chief Justice

Memorandum Opinion on Rehearing delivered
and filed this the 11th day of December, 2008.